THOMA OPTICIANS, INC., Appellant,

v.

BARNES, DENNIG & COMPANY, Appellee.

[Cite as *Thoma Opticians, Inc. v. Barnes, Dennig & Co.*, 151 Ohio App.3d 566, 2003-Ohio-673.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–020060.

Decided Feb. 14, 2003.

568

Schroeder, Maundrell, Barbiere & Powers and John W. Hust; Crabbe, Brown & James, L.L.P., and Brian E. Hurley, for appellant.

Rendigs, Fry, Kiely & Dennis and Thomas S. Shore, for appellee.

Per Curiam.

{¶ 1} Plaintiff-appellant Thoma Opticians, Inc. ("Thoma") appeals the judgment of the trial court entered in favor of defendant-appellee Barnes, Dennig & Company ("BD") in an accountant-negligence action. For the following reasons, we affirm the judgment of the trial court.

{¶ 2} From 1980 to 1992, BD rendered accounting services to Thoma, including performing annual reviews.[1] Thoma's accountant expert testified that an annual review required an accounting firm to review the client's financial forms, such as bank statements, to speak with the client's personnel, and then to create a financial statement for the client. During a review, the accounting firm would also perform analytical tests on account balances to verify that those figures were calculated using generally accepted accounting principles. A review was more thorough than a compilation, which only required the accountant to place the client's internal income statement and balance sheet into a financial-statement format, but less thorough than an audit, which required the accountant to verify the financial information (account balances) it received from the client by contacting the appropriate financial institutions.

{¶ 3} Debbie Bronnert, Thoma's internal bookkeeper, embezzled over $120,000 from Thoma's corporate accounts from 1988 until 1994, when Fifth Third Bank employees discovered the thefts. To accomplish her thefts, Bronnert either changed the payee's name on Thoma's corporate checks or wrote in her own name as the payee when Thoma's officers signed corporate checks in blank.

{¶ 4} In 1994, Thoma sued BD for professional negligence in failing to discover Bronnert's thefts while conducting Thoma's annual reviews. The trial court granted BD's motion for partial summary judgment because the four-year statute of limitations for accountant negligence barred claims for BD's conduct prior to August 1990. This ruling was not appealed. As Thoma had terminated BD's services in September 1992, the only conduct that remained at issue was BD's performance in the reviews it conducted in 1990 and 1991. On the eve of trial, Thoma voluntarily dismissed its complaint.

{¶ 5} On October 5, 2000, Thoma refiled its complaint against BD. Prior to trial, BD moved to limit the evidence of damages that may have accrued after September 1992, the date it stopped providing services to Thoma. Thoma, in turn, moved to exclude evidence concerning the new accounting firm it had hired to replace BD in 1992 and the fact that the firm had not discovered Bronnert's thefts while performing Thoma's annual reviews. That evidence was going to be offered by BD to support its affirmative defense of an intervening cause. The trial court ruled at the beginning of the trial that evidence of damages arising after September 1992 could be admitted if it could be linked to BD's performance in conducting the reviews in 1990 and 1991. The court also ruled that evidence concerning Thoma's new accounting firm, Wade, Werner & Thompson, could be introduced.

---

1. Thoma terminated BD's services in 1992 on good terms.

{¶ 6}   At trial, Thoma advanced as its theory of liability that BD had negligently relied on Bronnert's verbal assurance in the 1990 review that the cash value on Thoma's internal balance sheet was the same as the balance on its year-ending bank statement.  Thoma asserted that if BD had requested a copy of the company's bank reconciliation/balance sheet, it would have discovered Bronnert's thefts.  With respect to the 1991 review, Thoma asserted that if BD had demanded to see a copy of the complete year-end bank statement, as it had originally requested, instead of merely accepting an altered copy of the last page of the statement, it would have discovered Bronnert's thefts.

{¶ 7}   To support these theories, Thoma presented the testimony of Bronnert and its accounting expert, Helen Cohen.  Both Bronnert and Cohen testified that in previous years, BD, prior to conducting its annual review, had requested and received original and complete bank statements from Bronnert.  With respect to the 1990 review, however, Cohen admitted that there was no requirement that an accountant performing a review obtain the client's bank reconciliation/balance sheet.  Instead, this was a matter committed to the accountant's professional judgment.

{¶ 8}   Cohen also testified about a company's internal accounting practices. She opined that the person responsible for writing checks and recording them in the corporate ledger should not have been the same person who reconciled the bank account.  In other words, one person should have been "controlling the cash," and a different person should have been "recording the cash."  The evidence presented at trial indicated that under Thoma's internal accounting system Bronnert performed both of these jobs.

{¶ 9}   Bronnert, as well as other Thoma employees, testified at trial that Joseph Thoma, the company president, was her immediate supervisor.  But Mr. Thoma testified that he believed that BD was responsible for supervising Bronnert even though it was only at Thoma's offices two weeks out of the year. According to the record, Mr. Thoma was in Thoma's administrative offices, where Bronnert worked, two and one-half days each week.

{¶ 10}   In its defense, BD introduced evidence indicating that BD was not Bronnert's actual supervisor, that it was left to the accountant's professional judgment whether to seek a complete year-end bank statement, and that Thoma's own negligence in failing to discover Bronnert's thefts had contributed to its damages.  Specifically, BD presented evidence of the following: Thoma's knowledge that Bronnert had experienced emotional problems that had hampered her job performance;  Thoma's awareness that Bronnert had purchased a large amount of consumer goods, such as new cars and expensive clothing;  and Thoma's knowledge that many of its venders had not been paid.

{¶ 11} In the middle of the proceedings, the trial court reconsidered its pretrial rulings and determined that no evidence of damages arising after September 14, 1992, was to be admitted. It also held that there was to be no evidence of Thoma's contributory negligence after that date.

{¶ 12} In the verdict returned by the jury, both parties were held accountable for the failure to detect Bronnert's thefts, but because Thoma's negligence (67 percent) exceeded BD's (33 percent), the trial court entered judgment in BD's favor. On appeal, Thoma now presents six assignments of error. Each assignment asserts that the trial court erred in making an evidentiary ruling that prejudiced Thoma.

{¶ 13} As a trial court has broad discretion in the admission or exclusion of evidence, so long as the court exercises that discretion in line with the applicable rules, an appellate court will not reverse absent a clear showing of an abuse of discretion and material prejudice to the complaining party.[2] An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable."[3] It does not mean that an appellate court may substitute its judgment for that of the trial court.[4]

{¶ 14} In its first assignment of error, Thoma asserts that the trial court erred in excluding evidence concerning BD's annual reviews prior to 1990. Specifically, Thoma attacks the trial court's refusal to permit a showing that during previous review engagements BD had requested, received, and reviewed original, complete year-end bank statements and copies of bank reconciliations for all corporate cash accounts. Thoma argues that if BD had reviewed the complete year-end bank statements or bank reconciliations, which it had not done in 1990 and 1991, it would have discovered Bronnert's thefts.

{¶ 15} The trial court's rationale for excluding this evidence was due to the ruling in the voluntarily dismissed case that BD was not liable for any damages occurring before August 1990. In an attempt not to confuse the jury, the trial court limited all evidence to the actions of BD during the years 1990 and 1991. Based on that reasoning, we cannot say that its ruling was arbitrary or unreasonable. Nevertheless, even if we were to conclude that there was an abuse of discretion, we hold that Thoma suffered no material prejudice because Thoma was otherwise able to introduce evidence relating to BD's reviews prior to 1990.

2. *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056; *State v. Martin* (1985), 19 Ohio St.3d 122, 129, 19 OBR 330, 483 N.E.2d 1157.

3. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

4. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

{¶ 16} When Thoma asked its accountant expert if she had reviewed BD's files, which included papers from reviews prior to 1990, she responded in the affirmative and stated, "[F]or a long period of time, they [BD] would obtain the bank statements, and then it may have been '90 or '91 when they—they just didn't have them, or that they had just maybe one page of it [the bank statement]." Further, Bronnert testified that each year she was at Thoma, BD had requested complete copies of year-end bank statements and that prior to 1990, "a lot of times" the complete statements were made available to BD. Because the evidence that Thoma wanted admitted was brought in through two witnesses, we conclude that Thoma suffered no prejudice. The first assignment of error is overruled.

{¶ 17} In its second assignment of error, Thoma asserts that the trial court erred to its prejudice in allowing BD to introduce evidence, supporting its defense of intervening cause, that Thoma had hired another accounting firm in January 1993. The record demonstrates that the trial court's decision was made to balance its other ruling that Thoma could introduce evidence of damages arising after September 14, 1992. Under these circumstances, we hold that the decision was not, at that stage of the proceedings,[5] arbitrary or unreasonable. Additionally, we note that the court refused to give an instruction on intervening cause, finding that there was no evidence supporting that defense, i.e., that the new accounting firm had been negligent. Further, the trial court prohibited any documentary evidence, such as any engagement letters between the new firm and Thoma, from going to the jury. There was, in sum, no abuse of discretion.

{¶ 18} And if there was an error, Thoma did not suffer any material prejudice in light of the properly admitted evidence of Thoma's own negligence in failing to discover Bronnert's thefts: its failure to adequately supervise and evaluate Bronnert, its failure to monitor internal accounting controls, and its awareness of signs of Bronnert's mental and emotional instability. The second assignment of error is overruled.

{¶ 19} In its third assignment of error, Thoma asserts that the trial court erred in permitting BD to introduce evidence of Thoma's alleged "contributory negligence occurring after September 1992, when the court had previously ruled that BD was not liable for any loss occurring after that date," thus making the evidence irrelevant. After reviewing the record, we disagree.

{¶ 20} After Thoma had presented its case, but before BD presented its defense, the trial court ruled that any damages arising from BD's negligence

---

5. BD elicited the testimony of the new accounting firm during its cross-examination of Joseph Thoma, during Thoma's case-in-chief.

would be limited to the period from August 1990 to September 14, 1992. This was a reversal of an earlier ruling that allowed the parties to place in controversy events that occurred at later times. As a result of the court's change in position and other confusion over the issues at trial, there was some evidence introduced, and some argument made by BD, about alleged missteps made by Thoma after September 14, 1992. In the context of the whole trial, however, the effect of this was inconsequential, particularly when the court made it clear to the parties that during closing arguments they could refer only to events that occurred within the period ending on September 14, 1992. For this reason it cannot be said that Thoma suffered any prejudice, and the third assignment of error is, accordingly, without merit.

{¶ 21} In its fourth assignment of error, Thoma maintains that the trial court erred in allowing a lay witness, Jennifer Homer, to testify that Thoma officers sometimes signed blank company checks. Thoma argues that Homer lacked the necessary expertise to make such a statement due to her lack of knowledge concerning the alteration of checks in the perpetration of fraud. Regardless of whether the trial court erroneously allowed Homer to testify, Thoma was not prejudiced by the testimony when there was independent firsthand testimony from Bronnert herself that some of her thefts resulted from the officers' signing of blank checks. The fourth assignment of error is over-ruled.

{¶ 22} Thoma's fifth and sixth assignments of error relate to the trial court's rulings prohibiting Thoma from introducing certain evidence concerning the extent of its damages. These assignments of error are moot because there is no basis to disturb the jury's resolution of the underlying negligence issues in BD's favor as a result of our rulings on other assignments of error.

{¶ 23} The judgment of the trial court is affirmed.

Judgment affirmed.

DOAN, P.J., HILDEBRANDT and SUNDERMANN, JJ., concur.