[Cite as *KGM Capital, L.L.C. v. Jackson*, 2014-Ohio-2427.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| KGM CAPITAL, LLC, | : | APPEAL NO. C-130438 |
| | | TRIAL NO. 12CV-11483 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| JENNIFER JACKSON, | : | |
| | | |
| Defendant-Appellant. | : | |

Civil Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause
Remanded

Date of Judgment Entry on Appeal:  June 6, 2014

*John Coomes* for Plaintiff-Appellee,

*Victor Dwayne Sims* for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1} Defendant-appellant Jennifer Jackson appeals from the trial court's judgment, following a bench trial, in favor of her former landlord, plaintiff-appellee KGM Capital LLC ("KGM"). Because there is competent credible evidence to support the trial court's determination that Jackson had breached her lease agreement with KGM and that she had failed to prove her counterclaims by a preponderance of the evidence, we affirm the trial court's judgment in favor of KGM. We conclude, however, that the trial court's award of attorney fees and its award of $1300 in liquidated damages to KGM under provision V 6 of the parties' lease agreement is contrary to law. We, therefore, vacate the trial court's award of attorney fees and the $1300 in liquidated damages, and remand this cause to the trial court to enter judgment accordingly. We affirm the trial court's judgment in all other respects.

### The Lease and Trial Court Proceedings

{¶2} Jackson entered into a lease agreement for a two-bedroom apartment from KGM for the term of July 8, 2011, to July 31, 2012. At the time she entered into the lease agreement, she paid KGM a security deposit of $650. Under the terms of the lease, Jackson paid $650 a month in rent. Jackson vacated the apartment on March 30, 2012.

{¶3} On May 10, 2012, KGM filed a complaint alleging that Jackson had breached the terms of the lease agreement by failing to pay a portion of her rent for February and March 2012, and then abandoning the property at the end of March 2012. The complaint sought $3562 in rent, an additional $1300 in liquidated damages, attorney fees, filing fees, and court costs. KGM moved for a default judgment against Jackson, but a magistrate granted her an extension of time to file an answer and two counterclaims. In her answer, Jackson denied breaching the lease agreement. In her first counterclaim, she alleged that she had vacated the premises due to KGM's failure to

2

comply with R.C. 5321.04(A)(1) and 5321.04(A)(8) and (B), and to enforce a nonsmoking provision in the lease agreement. In her second counterclaim, she alleged that KGM had violated R.C. 5321.16 by failing to refund her security deposit or to provide her with an itemization of the deductions from her security deposit.

{¶4} The case proceeded to a trial before the court. KGM presented testimony from one of its partners, Michael Kaufman, as to Jackson's breach of the lease. John Coomes, a partner with KGM who represented the partnership throughout the proceedings against Jackson, was questioned by the trial court as to the amount and reasonableness of attorney fees that he had submitted in an affidavit. Jackson testified on her own behalf.

{¶5} At the conclusion of the trial, the trial court found in favor of KGM on its breach-of-lease claim. It further found that Jackson had failed to prove her counterclaims by a preponderance of the evidence, and dismissed them with prejudice. The trial court awarded KGM $4682 in damages, court costs, and $4560 in attorney fees.

### *Jackson's Breach of the Lease and Her Counterclaims*

{¶6} For ease of discussion, we address Jackson's assignments of error out of order. In her second and third assignments of error, Jackson argues that the trial court erred in determining that she had breached the lease agreement and that she had failed to prove her counterclaims by a preponderance of the evidence. She makes a number of arguments in her brief, which in essence, challenge the manifest weight of the evidence supporting the trial court's judgment.

{¶7} In reviewing judgments under a manifest weight analysis, this court " 'weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [finder

of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " (Citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. "A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24, quoting *Seasons Coal Co, Inc. v. Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984).

{¶8} At trial, Kaufman testified that Jackson had entered into a lease agreement with KGM for a one-year term beginning July 8, 2011, and ending July 31, 2012. Jackson had failed to pay a portion of her rent for February 2012 and March 2012, and she had abandoned the apartment at the end of March, without providing a forwarding address. Thus, KGM had to subpoena Jackson's employer to obtain her current address.

{¶9} Jackson testified that she had moved into the building because there was a provision in the lease agreement that prohibited smoking on the premises. She testified that she and her children suffered from allergies and it was important that they not be exposed to cigarette smoke. In March 2012, she notified KGM that the tenant in the apartment below her was a chain smoker. She sent them roughly 15 emails and they responded to only five to ten of them, but they did not remedy the smoking issue.

{¶10} Jackson also testified that during her tenancy, her apartment had squirrel and insect issues. She noticed the insect problems in April 2011. She testified that there were roaches under her kitchen sink, flies on her windowsill, and bed bugs on her living room wall and in her bedroom closet. She also had a scratching noise in her ceiling, which she later learned was caused by a squirrel. She

testified that she and her children were having difficulty sleeping because of the insects and the scratching noises on her ceiling. She made numerous complaints to KGM. She even took photos of the insects and sent them to KGM, but KGM did not remedy the issue.

{¶11} So in February 2012, she contacted the Hamilton County Board of Health. They sent someone to her apartment. She showed the person photographs she had taken of various insects in her apartment and a video of the scratching in her apartment ceiling. At trial, she introduced 33 photos. Six of the photos depicted flies on a windowsill, two of the photos she testified showed bed bug bites on her hands, and 23 photos depicted individual insects on the floor of her apartment. None of the photos were dated.

{¶12} Jackson testified that the board of health found some violations in her apartment, which they asked KGM to remedy. She acknowledged that KGM had removed the squirrel from inside her apartment ceiling, but she testified that they had not eliminated the insect problem. As a result, she decided she could no longer live in the apartment. On February 29, 2012, she gave KGM 30 days' notice, as required under the lease, that she intended to vacate the apartment. After she had given KGM notice of her intent to leave, KGM had subsequently attempted to enter her apartment while she had been sleeping, without reasonable notice or authorization.

{¶13} Jackson additionally testified that her rent was electronically deposited into KGM's account every time her employer paid her. When she left the apartment on March 30, 2012, she was current with her rent. She vacated the apartment because she could no longer live with the insect and smoking conditions. She gave her forwarding address and apartment keys to Jesse Day, KGM's

maintenance man. KGM did not return her security deposit or give her an itemization of her deposit.

{¶14} Kaufman testified that after receiving Jackson's complaints via email about the smoking, he had emailed Jackson back to notify her that he was looking into the situation. He then visited the tenant, whom Jackson had claimed was a chain smoker, but he could find no ashtrays or evidence that the tenant had been smoking in his apartment. He stated that he had seen tenants smoking outside near the front of the building, and it was possible that the smoke had come in through a common window that tenants usually left open at the top of the stairwell where the door to Jackson's apartment was located. No other tenants besides Jackson had complained of cigarette smoke.

{¶15} With respect to Jackson's claim that the apartment was insect infested, Kaufman testified that KGM had paid a tenant, who had worked for an extermination company, as well as Day to spray the building weekly beginning January 2012 for insects, and that no other tenant besides Jackson had complained about insects in their apartment. He testified that KGM had received a list of issues concerning caulking and insects that the board of health had asked them to address in Jackson's apartment. KGM addressed the issues, and Kaufman informed the board of health by letter dated March 6, 2012, that KGM had remedied the issues. A copy of the letter he had sent to the board was admitted into evidence. KGM had no further correspondence with the board of health about Jackson's apartment after Kaufman had sent the letter.

{¶16} Kaufman testified that in March 2012, he had entered Jackson's apartment with John Coomes, another partner with KGM, and two Springdale police officers, because of a plumbing emergency. The tenant in the apartment below

Jackson's apartment had called to complain that the bathroom ceiling was falling in, and that there must be a leak in Jackson's apartment. He contacted Jackson and asked if KGM could send a plumber to her apartment. Jackson told them they could not enter her apartment and hung up on them. So Kaufman and Coomes had to call the police to help them gain entrance to her apartment to address the issue. They were able to turn off the water to the toilet in Jackson's apartment, which was the source of the water leak. According to Kaufman, Jackson had pretended to be asleep in the bedroom when they arrived with police. He further testified that Jackson had complained of caulking issues around her bathtub, but had initially denied their maintenance man entrance into the apartment to correct them. He described Jackson as a difficult tenant, who was trying to manufacture issues to get out of her lease agreement.

{¶17} Finally, with respect to Jackson's security deposit, Jackson testified that she had sent an email to KGM on February 29, 2012, notifying them that she was terminating the lease agreement and supplying a forwarding address. She, however, did not produce the email at trial. Kaufman denied that KGM had received the email, and testified that KGM had to subpoena Jackson's address from her former employer in order to initiate the current legal proceedings against her.

{¶18} As the trial court stated on the record at the conclusion of the bench trial, the determination of Jackson's counterclaims and KGM's contract claim rested upon the credibility of the witnesses. Here, the trial court stated that it found Kaufman's testimony to be more credible than the testimony offered by Jackson. After considering the full record of the trial court, including the testimony of the witnesses and the exhibits admitted into evidence, and the terms of the lease agreement, we cannot say the trial court erred in finding that Jackson had failed to

prove her counterclaims by a preponderance of the evidence, and that she had breached the lease agreement by failing to pay rent and abandoning the premises. As a result, we overrule Jackson's second and third assignments of error.

### Attorney Fees

{¶19} In her first assignment of error, Jackson argues the trial court erred in awarding KGM attorney fees. We agree.

{¶20} R.C. 5321.06 provides that "[a] landlord and tenant may include in a rental agreement any terms and conditions * * * that are not inconsistent with or prohibited by R.C. Chapter 5321 of the Revised Code or any other rule of law." R.C. 5321.13 bars certain rental agreement terms. Pertinent here, R.C. 5321.13(C) provides that "[n]o agreement to pay the landlord's or tenant's attorney fees shall be recognized in any rental agreement for residential premises or in any other agreement between a landlord and tenant."

{¶21} In *Quinlan v. Lienesch*, 1st Dist. Hamilton No. C-120716, 2013-Ohio-2288, ¶ 12, this court reversed a $500 attorney fee award to a landlord, which was based upon a provision in the parties' lease agreement allowing for the award of attorney fees to the prevailing party in the event of a legal dispute. We held the provision unenforceable as a matter of law based upon the plain language of R.C. 5321.13(C). *Id.*

{¶22} Similarly, here the trial court's award of attorney fees was based upon Section IV 5 of the lease agreement, which provided that Jackson would reimburse KGM for "all reasonable expenses incurred due to [her] violation of any term or provision of th[e] lease, including but not limited to $25.00 for each Notice to Pay, Notice to Quit, or other notice mailed or delivered by [KGM] to [Jackson] due to [Jackson's] non-payment of rent/all court costs and attorney fees and all other costs of and or

litigation." (sic) Thus, we agree with Jackson that the trial court violated R.C. 5321.13(C) when it awarded attorney fees based upon this contractual provision.

{¶23}   KGM, nonetheless, argues that the attorney fee award was appropriate because Jackson had acted in bad faith. *See William v. Banc One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7.  Bad faith "implies a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty, or an actual intent to mislead or deceive another." *See Covenant Dove Holding Co., LLC v. Mariner Health Care, Inc.*, 1st Dist. Hamilton No. C-120878, 2013-Ohio-3824, ¶ 7.   The problem with KGM's argument, however, is that it never argued during the trial that it was entitled to attorney fees on this basis.  Instead, it argued it was entitled to fees based upon Section IV 5 of the lease agreement.  Thus, the trial court never made any finding concerning bad faith.   And contrary to KGM's assertions, the trial court's statement at the conclusion of the trial that Jackson was not a credible witness cannot be equated with a finding of "bad faith."

{¶24}   Given that the contractual provision in the lease agreement providing for attorney fees is contrary to law, and that the trial court made no finding of "bad faith," we conclude that the trial court erred as a matter of law in awarding attorney fees to KGM. *See, e.g., Wright v. Fleming*, 1st Dist. Hamilton No. C-070121, 2008-Ohio-1435, ¶ 5-6.  As a result, we sustain Jackson's first assignment of error.

### Liquidated-Damages Clause

{¶25}   In her fourth assignment of error, Jackson argues that the trial court erred by awarding KGM $1300 in damages under Section V 6 of their residential lease agreement.  Section V 6 provides:

> All parties agree that termination of this agreement prior to
> the expiration date shall constitute breach of this Lease and

that all security deposits and one full month's rent shall be forfeited to the Landlord. Tenant shall remain liable for all other costs and/or damages associated with a breach of the conditions of the Lease.

{¶26} Jackson argues Section V 6 operates as a liquidated-damages clause that is contrary to R.C. Chapter 5321 and is therefore, unenforceable.

{¶27} R.C. 5321.06 permits a landlord and tenant to "include in a rental agreement any terms and conditions, including any term relating to rent, the duration of an agreement, and any other provisions governing the rights and obligations of the parties that are not inconsistent with or prohibited by Chapter 5321 of the Revised Code or any other rule of law." R.C. 5321.12 provides that "[i]n any action under Chapter 5321 of the Revised Code, any party may recover damages for the breach of contract or the breach of any duty that is imposed by law."

{¶28} Jackson argues that Section V 6 is inconsistent with or prohibited by R.C. 5321.16, which pertains to security deposits. R.C. 5321.01(E) defines a security deposit as "any deposit of money or property to secure performance by the tenant under a rental agreement." R.C. 5321.16 sets forth the procedures, rights, and obligations concerning security deposits. Pertinent here, are subsections (B) and (C) of the statute, which state as follows:

(B) *Upon termination of the rental agreement any property or money held by the landlord as a security deposit may be applied to the payment of past due rent and to the payment of the amount of damages that the landlord has suffered by reason of the tenant's noncompliance with section 5321.05 of the Revised Code or the rental agreement.* Any deduction from the security deposit shall be itemized

and identified by the landlord in a written notice delivered to the tenant together with the amount due, within thirty days after termination of the rental agreement and delivery of possession. The tenant shall provide the landlord in writing with a forwarding address or new address to which the written notice and amount due from the landlord may be sent. If the tenant fails to provide the landlord with the forwarding or new address as required, the tenant shall not be entitled to damages or attorney fees under division (C) of this section.

(C) If the landlord fails to comply with division (B) of this section, the tenant may recover the property and money due him, together with damages in an amount equal to the amount wrongfully withheld, and reasonable attorney fees.

(Emphasis added.)

{¶29}   R.C. 5321.16 provides that the security deposit may be applied to past due rent or to damages the landlord has suffered by reason of the tenant's noncompliance with section 5321.05 of the Revised Code or the rental agreement. However, in this instance, KGM retained the security deposit and sought past due rent without deducting the amount of Jackson's security deposit. This is contrary to law.

{¶30}   In *Carr v. Ed Stein Realtors*, 10 Ohio App.3d 242, 243, 461 N.E.2d 930 (9th Dist.1983), the Ninth Appellate District held that a residential landlord was not entitled to recover late charges and the amount of the tenant's security deposit, which the landlord had characterized as liquidated damages, where the landlord had elected to prove his actual damages. The Ninth District held that permitting the landlord to recover the forfeiture of the security deposit and the late charges imposed

in addition to an award of actual damages suffered by the landlord constituted an unlawful penalty imposed upon the tenant. *Id.*

{¶31} We agree with the reasoning in *Ed Stein Realtors*, and reach a similar conclusion with regard to Section V 6 of the residential lease agreement, which provides that the tenant, upon forfeiture of the lease agreement, automatically forfeits the security deposit and one months' rent to KGM. This provision bears no relation to any actual damages suffered by KGM under the lease agreement. Thus, it can only operate as a penalty to Jackson for her early termination of the lease agreement. *See, e.g., McGowan v. DMX Group IX*, 7 Ohio App.3d 349, 455 N.E.2d 1052 (10th Dist.1982); *Village Station Assocs. v. Geauga Co.*, 84 Ohio App.3d 448, 616 N.E.2d 1201 (8th Dist.1992). We, therefore, conclude that the trial court erred in awarding KGM $1300 under this provision. As a result, we sustain Jackson's fifth assignment of error.

{¶32} Having found merit in Jackson's first and fourth assignments of error, we vacate the portion of the trial court's judgment awarding KGM attorney fees and the $1300 penalty under Section V 6 of the lease agreement. We remand this cause to the trial court to enter judgment accordingly. We affirm the trial court's judgment in all other respects.

Judgment affirmed in part, reversed in part, and cause remanded.

**CUNNINGHAM, P.J,** and **HILDEBRANDT, J.,** concur.

Please note:
    The court has recorded its own entry this date.

12