[Cite as *Hensel v. Childress*, 2019-Ohio-3934.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

MARY HENSEL,                              :        APPEAL NO. C-180100
                                                   TRIAL NO. A-1701143
    Plaintiff-Appellee,
                                          :        *O P I N I O N.*
    vs.

RONALD CHILDRESS,                         :

    Defendant-Appellant.            :


Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  September 27, 2019


*Matthew R. Chasar*, for Plaintiff-Appellee,

*William D. Bell, Sr.*, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1} Defendant-appellant Ronald Childress has appealed the trial court's award of damages and attorney fees in favor of plaintiff-appellee Mary Hensel in their landlord-tenant dispute.

{¶2} In three assignments of error, Childress argues that the trial court erred in admitting into evidence photographs of the property taken before he occupied the property, awarding attorney fees to Hensel, and awarding damages to Hensel without regard to the ordinary wear and tear that occurred on the property.

{¶3} For the reasons set forth below, we overrule all three assignments of error and affirm the judgment of the trial court.

### Factual Background

{¶4} Hensel owns a house at 8800 Montgomery Road, which she leased to Childress beginning in December 2010 until Childress moved out in November 2016. After Childress moved out, Hensel sued Childress for damage to the house. In October 2017, the trial court granted Hensel's motion for summary judgment as to Childress's liability for breach of lease and violations of his duties as a tenant under R.C. 5321.05. The court then held a bench trial to determine the amount of damages to be awarded.

### The Photographs

{¶5} Childress argues that Hensel failed to lay the proper foundation for the photographs of the property, and therefore, they should not have been admitted.

2

{¶6} A trial court has broad discretion in the admission or exclusion of evidence and an appellate court will not reverse the court's decision absent a clear showing of an abuse of discretion and material prejudice. *Thoma Opticians, Inc. v. Barnes, Dennig & Co.,* 151 Ohio App.3d 566, 2003-Ohio-673, 784 N.E.2d 1207, ¶ 13 (1st Dist.). An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Id.*

{¶7} Photographs are not objectionable if "they are properly identified, are relevant and competent and are accurate representations of the scene which they purport to portray." *State v. Woodards*, 6 Ohio St.2d 14, 25, 215 N.E.2d 568 (1966). Authentication of photographs simply requires that a witness, based on his familiarity with the subject matter of the photographs, establish that the photographs depict what the proponent claims they represent. *See State v. Searles,* 1st Dist. Hamilton Nos. C-180339 and C-180340, 2019-Ohio-3109, ¶ 7-8; *see also State v. Roseberry*, 197 Ohio App.3d 256, 2011-Ohio-5921, 967 N.E.2d 233, ¶ 68 (8th Dist.) ("a witness with personal knowledge of the subject of the photographs may authenticate them by testifying that the photographs fairly and accurately depict the subject at the time they were taken.").

{¶8} "It is unnecessary to show who took the photograph or when it was taken, provided that there is testimony that the photograph is a fair and accurate representation of what it represents." *State Farm Mut. Auto. Ins. Co. v. Anders,* 197 Ohio App.3d 22, 2012-Ohio-824, 965 N.E.2d 1056, ¶ 30 (10th Dist.).

{¶9} Cathy Kelly testified that she had lived in the house from 2009-2010, and was familiar with the premises. She testified that the house was very clean and in "perfect condition." Hensel introduced exhibit A to establish the condition of the

property before Childress moved in. Kelly identified exhibit A as photographs depicting the property, and testified that the photos fairly and accurately depicted the condition of the property when she moved out in 2010, shortly before Childress moved in. Childress objected to the photographs, arguing that Kelly did not identify who took the pictures or when they were taken. The court overruled the objection and admitted exhibit A.

{¶10} Thomas Hogan, a contractor who worked on the house, testified that exhibit A fairly and accurately represented the condition of the house in 2010. Hogan stated that he walked through the property with Hensel after Childress moved out, and took photos of the house. He identified these "after" photos as exhibit C, and stated that they fairly and accurately depicted the condition of the house after Childress moved out. Childress did not object to the admission of exhibit C, and the photographs were admitted into evidence.

{¶11} Hensel testified that the photos in exhibit A fairly and accurately depicted the house prior to Childress moving in, and that the photos in exhibit C fairly and accurately depicted the house after Childress moved out.

{¶12} As the Tenth District stated in the *State Farm* case, it is not necessary that the witness identify who took the photo or when it was taken, so long as the witness testifies that the photo is a fair and accurate representation of what it represents. *State Farm* at ¶ 30. Kelly's, Hogan's, and Hensel's familiarity with the property and their testimony were sufficient to establish that the photos in exhibit A fairly and accurately represented the house prior to Childress moving in. It was not an abuse of discretion for the court to admit the photographs in exhibit A.

{¶13} Childress did not object to the admission of exhibit C, and so we review the admission of those photos only for plain error. *See Saqr v. Naji,* 1st Dist. Hamilton No. C-160850, 2017-Ohio-8142, ¶ 15. Hogan was familiar with the property from doing contracting work there and from his inspection of the property with Hensel after Childress moved out. He and Hensel both testified that exhibit C was a fair and accurate depiction of the condition of the property after Childress left. It was not plain error for the trial court to admit exhibit C.

{¶14} Accordingly, the trial court did not err in admitting the photographs in exhibit A or exhibit C. Childress's first assignment of error is overruled.

### *Attorney Fees*

{¶15} Childress argues that R.C. 5321.13(C) prohibits the award of attorney fees. An award of attorney fees is reviewed for an abuse of discretion. *State ex rel. Cincinnati Enquirer v. Allen,* 1st Dist. Hamilton No. C-040838, 2005-Ohio-4856, ¶ 11.

{¶16} R.C. 5321.13(C) states that "no agreement to pay the landlord's or tenant's attorney fees shall be recognized in any rental agreement for residential premises or in any other agreement between a landlord and tenant."

{¶17} In *KGM Capital, L.L.C. v. Jackson*, 1st Dist. Hamilton No. C-130438, 2014-Ohio-2427, ¶ 22, the lease contained a provision awarding attorney fees to the landlord. The provision stated that the tenant would reimburse the landlord for

all reasonable expenses incurred due to [her] violation of any term or provision of th[e] lease, including but not limited to $25.00 for each Notice to Pay, Notice to Quit, or other notice mailed or delivered by

[KGM] to [Jackson] due to [Jackson's] non-payment of rent/all court costs and attorney fees and all other costs of and or litigation.

*Id.* The trial court awarded attorney fees based on this provision in the lease. *Id.* This court reversed, holding that the lease provision violated R.C. 5321.05(C). *Id.* at ¶ 24.

{¶18} The lease agreement between Hensel and Childress contained the following provision,

in any case, Owner/ Agent may enter and take possession of the premises and ask the court of appropriate jurisdiction to require you to be held responsible for the paying of such attorney fees and court costs for the enforcement of certain provisions of this lease *as may be provided for by state law*.

(Emphasis added.) Unlike the lease provision in *KGM,* this provision does not provide an independent right to attorney fees, rather it allows for attorney fees only as may be provided for by state law.

{¶19} Hensel argues that she should receive attorney fees not because of the lease provision, but because she is permitted to recover them under R.C. 5321.05(C)(1).

{¶20} R.C. 5321.05(C)(1) expressly allows the landlord to recover "reasonable attorney fees" when the tenant violates any of his obligations under R.C. 5321.05(A)(1)-(8). In its grant of summary judgment as to liability, the trial court determined that Childress violated R.C. 5321.05(A) by failing to keep the property safe and sanitary, dispose of all rubbish, and maintain the appliances in good working order and condition, and by negligently damaging the property. Under

these circumstances, Hensel may recover attorney fees pursuant to R.C. 5321.05(C)(1).

{¶21} At oral argument, Childress argued that the trial court erred by treating the attorney fees as damages and not as costs. The trial court sufficiently treated the attorney fees as costs, even though it did not explicitly describe them as costs in its order. Moreover, Childress raised this issue for the first time at oral argument, and so the issue is waived. "An issue raised during oral argument for the first time and not assigned as error in an appellate brief is waived." *Andreyko v. Cincinnati*, 153 Ohio App.3d 108, 2003-Ohio-2759, 791 N.E.2d 1025, ¶ 20 (1st Dist.); *see* App.R. 12(A)(1)(b) and 21(I).

{¶22} Childress's violations of R.C. 5321.05(A) establish his liability for attorney fees under R.C. 5321.05(C)(1). His second assignment of error is overruled.

### *Wear and Tear*

{¶23} Childress next argues that Hensel did nothing to maintain the property for 20 years, and that the trial court failed to account for ordinary wear and tear in awarding damages to Hensel.

{¶24} An award of damages in a landlord-tenant dispute is governed by a manifest-weight-of-the-evidence review. *See Bonfield v. Hillen,* 1st Dist. Hamilton No. C-930029, 1994 WL 35030, *2-3 (Feb. 9, 1994) (applying manifest-weight-of-the-evidence review of the trial court's award of damages in landlord-tenant dispute); s*ee also Bibler v. Nash*, 3d Dist. Hancock No. 5-05-09, 2005-Ohio-5036, ¶ 17 (court applied a manifest-weight standard of review to the trial court's award of damages in a landlord-tenant dispute under R.C. 5321.05); *R.C.H. Co. v. 3-J Machining Serv., Inc.,* 8th Dist. Cuyahoga No. 82671, 2004-Ohio-57, ¶ 8, fn. 1 (court

7

noted that abuse of discretion was not the correct standard, and applied a manifest-weight-of-the-evidence review in landlord-tenant dispute over damages).

{¶25} Under a manifest-weight-of-the-evidence review, an appellate court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. "[E]very reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Id.* at 21.

{¶26} A tenant is under a duty to return the premises to the landlord in substantially as good a condition as when received, but the landlord is not entitled to receive compensation for damages resulting from reasonable wear and tear. *Bibler* at ¶ 18; *see Cincinnati Oakland Motor Co. v. Meyer*, 37 Ohio App. 90, 93, 174 N.E. 154 (1st Dist.1930).

{¶27} When determining ordinary wear and tear, the court must look to the circumstances of each case. In *Cincinnati Oakland Motor Co. v. Meyer,* decided prior to the adoption of R.C. 5321.05, this court discussed ordinary wear and tear as it related to a heating system. This court looked at the age of the heating system, its expected life span, whether any repairs were conducted due to normal deterioration, and whether the tenant had damaged the heating system in any way which would be considered waste. *Cincinnati Oakland Motor Co.* at 93-94.

{¶28} Other districts have defined ordinary wear and tear in the negative based on the tenant's statutory obligations under R.C. 5321.05. If damage is not the kind specified in R.C. 5321.05 or the lease, then it is normally considered ordinary wear and tear. *Kelley v. Johnston,* 4th Dist. Gallia No. 01CA5, 2001 WL 1479243, *3 (Nov. 14, 2001). But, it is still the landlord's burden to link any damage to a failure of the tenant to fulfill his statutory obligations. *Zilka v. Asberry,* 6th Dist. Huron No. H-04-022, 2005-Ohio-1881, ¶ 9.

{¶29} In *Bibler*, 3d Dist. Hancock No. 5-05-09, 2005-Ohio-5036, at ¶ 18-20, the trial court went through each individual item of damage claimed by the landlord and determined whether the item exceeded ordinary wear and tear, and then held the tenants responsible for the excess damage.

{¶30} In the present case, Harry Wolke testified at trial as a remodeling contractor who was brought in by Hensel to prepare an estimate for the cost to restore the premises to a rentable condition after Childress moved out. He testified that it took him several days to document all of the repairs and prepare the estimate, which included all of the work which needed done on the house—including carpet, hardwood flooring, walls, painting, and appliances.

{¶31} He admitted that he did not know what condition the house was in before Childress moved in. He also admitted that a lot of the damages he noted on his estimate could not be seen in the photographs. But, he stated that the damage was beyond ordinary wear and tear based on comparison to other work he had done in the house, having been there 10-12 times to fix various things while Childress lived there. Wolke initially estimated the damages would cost $28,000 to fix, but Hensel reduced the estimate to $15,625 after accounting for wear and tear.

9

{¶32} Hensel inspected the house after Childress moved out and stated that the house was filthy, there were holes in the wall, she had to replace the appliances, there were black handprints around the doors and switch plates, and that one of the bathrooms was so dirty that she would have to replace it. As far as routine upkeep and maintenance is concerned, Hensel painted the interior of the house "a room at a time as it needed it" during the ten years she lived there prior to Childress moving in. She admitted that she had not refurbished the hardwood floors in the 18 years that she owned the property.

{¶33} Childress admitted to the damages owed for the overdue rent, late fees, utility bills, air conditioning unit, rubbish removal, and cleaning of the property. His main arguments were that the house was not in good condition when he moved in, and that any further damages were due to ordinary wear and tear. He stated that the house was not in the condition depicted in the "before" photos in exhibit A, or testified to by Hensel or her witnesses. He stated that there were scuffs on the floors and the walls were not freshly painted. He attributed any further damage to ordinary wear and tear.

{¶34} As discussed above, there was ample evidence that exhibit A accurately depicted the condition of the house before Childress moved in.

{¶35} As to wear and tear, there was ample evidence that Childress did not maintain the house in a clean and sanitary manner, did not clean the plumbing fixtures, negligently damaged parts of the premises, and failed to maintain the appliances in good working order. *See* R.C. 5321.05(A)(1)-(9). Pursuant to *Kelley* and *Zilka,* these types of damage are not ordinary wear and tear.

{¶36} Similar to the court in *Cincinnati Oakland Motor Co.,* the trial court considered testimony from Wolke, Hogan, and Hensel of the expected "life span" of the hardwood floors and the walls, and whether the damage was the result of deterioration or Childress's failure to fulfill his R.C. 5321.05 duties.

{¶37} In its entry, the court expressly considered what constituted ordinary wear and tear when deciding the amount of damages. It concluded that the house was in "excellent condition" when Kelly's lease terminated—giving great weight to the pictures in exhibit A and Kelly's testimony. From the pictures in exhibit C and the testimony of Hogan and Wolke, the court determined that the damage to the house was beyond ordinary wear and tear.

{¶38} In its award of damages, the trial court reduced the amount awarded for the floor refinishing by ten percent due to wear and tear, and the painting costs by 50 percent due to routine maintenance. Contrary to Childress's assertions, it is clear from the trial court's entry that it considered ordinary wear and tear in its award of damages, and in fact reduced the amount owed based on ordinary wear and tear.

{¶39} The photos tell the tale. The house was not only filthy; it sustained damage beyond what could reasonably be considered ordinary wear and tear. The photos and the testimony of Kelly, Hogan, Wolke, Hensel, and even Childress himself, provided ample evidence to support the trial court's determination of damages. The court's determination was not against the manifest weight of the evidence. Childress's third assignment of error is overruled.

### *Conclusion*

**{¶40}** The trial court did not abuse its discretion in admitting the before and after photos of the property, or when it awarded attorney fees pursuant to R.C. 5321.05(C)(1). Also, the court properly considered ordinary wear and tear in determining damages, and its determination of damages was not against the manifest weight of the evidence. All of Childress's assignments of error are overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

**MOCK, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.