[Cite as *State v. Juarez*, 2020-Ohio-6692.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 2020CA00067 |
| | : | |
| RAMON CANTERA JUAREZ | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
Common Pleas, Case No. 2019CR1569

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     December 14, 2020

APPEARANCES:

For Plaintiff-Appellee:

JOHN D. FERRERO, JR.
STARK CO. PROSECUTOR
KRISTINE W. BEARD
110 Central Plaza South, Ste. 510
Canton, OH 44702-1413

For Defendant-Appellant:

BERNARD L. HUNT
2395 McGinty Road NW
North Canton, OH 44720

*Delaney, P.J.*

{¶1}   Appellant Ramon Cantera Juarez appeals from the February 26, 2020 Judgment Entry of the Stark County Court of Common Pleas.  Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   This case arose in the early morning hours of July 14, 2019, when appellant forced entry in the home of his ex-girlfriend, Claudia, and attacked her boyfriend, Julio.

*Appellee's evidence*

{¶3}   Appellant and Claudia have known each other for about 12 years and had an on and off again romantic relationship which ended about three years before this incident.  Both have new partners.  Claudia's boyfriend's name is Julio.  Appellant saw Julio once, briefly, and knew Claudia was dating someone, but appellant and Julio did not know each other.  Julio has his own residence but sometimes visits Claudia overnight on weekends.

{¶4}   Appellant and Claudia share one minor child, J., age 11.  Claudia lives in a single-family residence in northwest Canton with her three minor children:  M., age 17, A., age 15, and J.   Appellant sees J. occasionally but does not have regular visitation with her.  Claudia testified she tries to encourage a relationship between appellant and J., but appellant has sporadic contact with J.

{¶5}   On Friday, July 13, 2019, Julio came over to Claudia's house after work. The two ate dinner, watched television, and fell asleep in Claudia's bedroom, which is on the first floor of the residence.  Claudia's bedroom is directly accessed by sliding glass

doors which are the "back door" of the residence.  Julio testified they fell asleep around midnight.

{¶6}  Around 2:00 a.m., Claudia was awakened by the sound of someone immediately outside pounding on the sliding glass doors.  Claudia looked out and saw appellant pounding on the doors.  She put clothes and shoes on, and awakened Julio.  Claudia told Julio she would go outside and find out what appellant wanted, but she didn't want any trouble and Julio was not to come outside.  Claudia said she would tell appellant to leave.

{¶7}  Claudia exited the house through the front door of the residence and encountered appellant on his way to the front door.  The two met in front of the house.  Appellant was calm at first, but he became increasingly upset, telling Claudia he could not get over the fact that she had a new boyfriend.  Appellant said he still loved her.  Claudia asked him to please leave, and appellant said "Julio wins."  Claudia said Julio is her boyfriend now, and appellant said "Maybe no one's going to win."  Claudia again asked appellant to leave and appellant appeared to start walking away, toward the back of the house.

{¶8}  Claudia went back inside the residence, entered her bedroom, and laid down.  Julio was asleep.  Claudia had just laid down when appellant began banging on the door again, harder this time.  Appellant screamed for Julio to come out.  Claudia told Julio again to stay in the bedroom, and she got up, intending to tell appellant to leave.

{¶9}  As Claudia made her way toward the front door, her son A. came downstairs from his bedroom.  A. is a high-school football player and wrestler.  This night, he was awake in his upstairs bedroom, playing video games with a headset on.  He was also

dog-sitting a friend's dog, and heard the dog suddenly barking a lot. A. came downstairs to investigate and encountered his mother on her way to the front door. She asked him to come outside with her, so he followed her out the front door and closed the door behind him. He testified the front door of the residence was therefore closed but not locked.

{¶10} Claudia and A. proceeded around the back of the house to the patio and the sliding glass doors. A. is familiar with appellant and knows him as "Munchie." A. observed appellant pounding on the glass doors, screaming for Julio. A. did not know at first where Julio was inside the house. A. and Claudia testified appellant was screaming for Julio to come out of the house, threatening him in Spanish that he would go to Honduras and kill his family. Claudia argued with appellant and appellant said he would kill Julio. A. observed Claudia and appellant near the family's garage, where Julio's car was parked. Appellant punched the side mirror of Julio's car and ripped the front license plate off.

{¶11} Claudia continued to ask appellant to leave, and it briefly appeared as though he was leaving, as he walked toward the alley alongside the house. Claudia and A. saw appellant pick up a rock, and Claudia feared he might throw it through a window or the front door. Claudia told A. to record appellant's movements with his phone and to check the front of the house.

{¶12} As A. rounded the corner of the house, he testified, "I see that the door is slammed open and I see him run inside." T. 170. A. yelled, "Munchie!" hoping to get appellant to stop. A. saw appellant remove his belt and wrap it around his fist. Appellant ran into Claudia's bedroom and A. yelled "Julio!" Julio was awake and out of bed, standing in the corner of the room holding a blanket. Appellant immediately charged into

the room and attempted to strike Julio, who wrapped him in the blanket. Appellant continued to throw punches as Julio and A. wrestled with him. A. eventually pulled appellant off Julio and put him in a headlock.

{¶13} Claudia entered the room and turned on the lights. She said she was calling the police and told appellant to leave. Appellant said "ok, ok, let me up," got up, and walked out with the belt. As appellant left the house, A. said, "Don't come back."

{¶14} During the struggle, appellant left visible injuries on Julio from scratching and gouging him as the two fought.

{¶15} Canton police officers arrived on the scene and spoke to the witnesses. Ptl. Robert Huber testified he was dispatched around 2:00 a.m. to the northwest city address and found Claudia, A., and Julio present. Claudia provided appellant's name and identifying information, including a description of the silver truck in which he left the scene. Huber observed visible injuries to Julio, including lacerations and scrapes on his face, back, and chest. Huber testified some of the gouge marks were consistent with fingernail scratches. Huber obtained written statements from the witnesses and took photos of Julio.

{¶16} Huber found appellant's name and address via a records search, and police looked for him that night without success.

*Appellant's trial testimony*

{¶17} At trial, appellant was the sole defense witness and told a markedly different story of the events of July 13 and 14, 2019. Appellant said he saw Claudia earlier in the day; he admitted he entered the sliding glass doors while she was sleeping and said he customarily used those doors because Claudia didn't want her children to know he was

there. Appellant testified that also at some point earlier in the day, he gave his daughter, J., money for school supplies.

{¶18} Later that night, therefore, appellant said he wanted to know what his daughter spent the money on. He wasn't interested in Claudia or her boyfriend; he wanted to see his daughter and felt entitled to do so. When pressed upon cross-examination about why he came to the house at 2:00 a.m. to speak to an 11-year-old, appellant said these events happened much earlier in the evening and denied that any of this occurred at 2:00 a.m. Appellant claimed he first knocked on the door at 11:00 p.m.

{¶19} Appellant testified that he first knocked on the sliding glass doors because that was what he customarily did. At some point he left and was circling the block in his vehicle, but became concerned when he saw an unknown male in boxer shorts standing in the doorway of the residence. He parked his vehicle a short distance away and walked toward the house, not looking for Claudia or Julio but for his daughter. He claimed the front door was open and no one stopped him from entering to investigate. Inside, he fought with a guy who bit his finger. Appellant also denied that he interacted with A. or that A. was present during the incident.

*Indictment, trial, and sentencing*

{¶20} Appellant was charged by indictment with one count of aggravated burglary pursuant to R.C. 2911.11(A)(1), a felony of the first degree, and one count of child endangering pursuant to R.C. 2919.22(A), a misdemeanor of the first degree. Appellant entered pleas of not guilty.

{¶21} The matter proceeded to trial by jury. Appellee moved to dismiss the count of child endangering before trial and the trial court granted the motion.

{¶22} Also before trial, appellant objected to admission of appellee's exhibits 6 through 15, which are photos of Claudia's residence. Appellant argued he was presented with the photos ten minutes before trial, and appellee responded that the photos only showed the home's exterior and interior to permit the witnesses to illustrate their movements on the night in question. The trial court noted appellant's continuing objection and ruled the photos were admissible, subject to any further issues raised during trial.

{¶23} Appellant moved for judgment of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence and at the close of all of the evidence; the motions were overruled. Appellant requested a jury instruction upon aggravated trespass; appellee objected and the trial court declined to give the instruction.

{¶24} The jury found appellant guilty as charged. At a later sentencing hearing, the trial court imposed a prison term of seven to ten and a half years.

{¶25} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶26} "I. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

{¶27} "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT BY ADMITTING INTO EVIDENCE EXHIBITS 6-15."

**ANALYSIS**

I.

{¶28} In his first assignment of error, appellant argues his conviction upon one count of aggravated burglary is against the manifest weight of the evidence and is not support by sufficient evidence. We disagree.

{¶29} The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), in which the Court distinguished between "sufficiency of the evidence" and "manifest weight of the evidence," finding that these concepts differ both qualitatively and quantitatively. *Id.* at 386. The Court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386–387. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. The Court noted that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Thompkins*, supra at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶30} In a test for sufficiency, "'the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt.'" (Emphasis sic.) *State v. Stallings*, 89 Ohio St.3d 280, 289, 731 N.E.2d 159, quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A sufficiency challenge asks whether the evidence adduced at trial "is legally sufficient to support the jury verdict as a matter of law." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, at ¶ 219. Evaluation of the witnesses' credibility is not relevant to a sufficiency analysis. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, at ¶ 79.

{¶31} By contrast, to evaluate a manifest-weight claim, a court must review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, at ¶ 328. The court must decide whether "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.'" *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶32} In the instant case, appellant was found guilty upon one count of aggravated burglary pursuant to R.C. 2911.11(A)(1), which states in pertinent part: "No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another."

{¶33} Appellant first argues his aggravated burglary conviction is against the manifest weight and sufficiency of the evidence because "the door was open and he walked in;" he claims he did not use force, stealth, or deception to enter the home. This

assertion is supported only by appellant's own self-serving testimony. A. testified that he came around the corner of the house in time to see appellant slam the front door open and run inside, removing his belt and wrapping it around his fist to use as a weapon. A., Claudia, and Julio testified these events transpired shortly after appellant was outside screaming for Julio to come out, threatening Julio and his family, and damaging Julio's vehicle.

{¶34} Appellant further argues Julio's testimony was not credible because he had a blanket over his head during the fight and declined medical attention, however, Julio's testimony was consistent with that of A. and Claudia. His testimony was also consistent with the physical evidence of his injuries established by appellee's photo exhibits one through five. The jury could reasonably reject appellant's claims that he was only worried for his daughter, had no idea who Julio was, and did not attack him because of his relationship with Claudia in light of the fact that appellant fled before police arrived, never spoke with J., and didn't indicate any concern for J's whereabouts during the incident.

{¶35} Finally, the fact that the front door of the residence did not sustain damage is not fatal to appellee's case. Appellant did not have permission to enter the home and effectively forced his way in that night after Claudia repeatedly told him to leave. In light of his threats and the belt wrapped around his fist, the jury could reasonably conclude appellant entered the residence for the purpose of assaulting Julio.

{¶36} Appellant's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. His first assignment of error is overruled.

II.

{¶37} In his second assignment of error, appellant argues the trial court should not have admitted appellee's exhibits 6 through 15, the photos of the residence. We disagree.

{¶38} Appellant argues the exhibits were not properly authenticated. We note appellant did not raise this objection at trial, instead objecting generally that the photos were provided only 10 minutes prior to the start of trial. Appellee's proffered exhibits at that time included the challenged photos of the residence [exhibits 6 through 15] and Exhibit 16, a Google map of Claudia's neighborhood depicting the location of her house, street, and alley. Appellant specifically did not object to the map and did not raise the question of authenticity of any of these exhibits.

{¶39} Exhibits 6 through 15 were introduced during Claudia's testimony; she identified the photos as the front, back, and side of the exterior of her house; the front door and back sliding glass door; the interior of the residence from the front door and looking toward the front door; and the interior of her bedroom. Julio was also shown Exhibit 13, depicting a bedroom window, and testified that he watched appellant outside through a different window.

{¶40} The trial court overruled appellant's objections to the photos on the basis that the photos would help the finder of fact understand the layout of the scene, which appellant himself was familiar with, and the photos didn't include any otherwise objectionable evidence of the crime. They are merely photos of the house.

{¶41} The admission or exclusion of relevant evidence rests in the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987).

Generally, all relevant evidence is admissible. Evid.R. 402. Abuse of discretion means more than an error of law or judgment. Rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Brooks*, 5th Dist. No. 2019 CA 0104, 2020-Ohio-4123, 157 N.E.3d 387, ¶ 63, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343.

{¶42} Photographs are not objectionable if "they are properly identified, are relevant and competent and are accurate representations of the scene which they purport to portray." *Hensel v. Childress*, 1st Dist. No. C-180100, 2019-Ohio-3934, 145 N.E.3d 1159, ¶ 8, appeal not allowed, 157 Ohio St.3d 1563, 2020-Ohio-313, 138 N.E.3d 1157, citing *State v. Woodards*, 6 Ohio St.2d 14, 25, 215 N.E.2d 568 (1966). Authentication of photographs simply requires that a witness, based on his familiarity with the subject matter of the photographs, establish that the photographs depict what the proponent claims they represent. *Hensel*, supra, citing *State v. Searles*, 1st Dist. Hamilton Nos. C-180339 and C-180340, 2019-Ohio-3109, ¶ 7-8 and *State v. Roseberry*, 197 Ohio App.3d 256, 2011-Ohio-5921, 967 N.E.2d 233, ¶ 68 (8th Dist.) ["A witness with personal knowledge of the subject of the photographs may authenticate them by testifying that the photographs fairly and accurately depict the subject at the time they were taken."]. Further, "[i]t is unnecessary to show who took the photograph or when it was taken, provided that there is testimony that the photograph is a fair and accurate representation of what it represents." *State Farm Mut. Auto. Ins. Co. v. Anders*, 197 Ohio App.3d 22, 2012-Ohio-824, 965 N.E.2d 1056, ¶ 30 (10th Dist.).

{¶43} In the instant case, Claudia identified each of the challenged photos as a true and accurate depiction of the inside and outside of her home. There is no suggestion in the record that the photos represent anything other than what they were claimed to represent. The trial court did not abuse its discretion in admitting the challenged evidence.

{¶44} Appellant's second assignment of error is overruled.

**CONCLUSION**

{¶45} Appellant's two assignments of error are overruled and the judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, P.J.,

Baldwin, J. and

Wise, Earle, J., concur.