[Cite as *Bonn v. Bonn*, 2015-Ohio-3642.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Brenda Bonn, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 14AP-967 |
| v. | : | (C.P.C. No. 11DR06-2241) |
| John Bonn, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 8, 2015

*Tyack, Blackmore, Liston & Nigh Co., L.P.A., Jefferson Liston* and *Elizabeth R. Werner*, for appellee.

*John Bonn*, pro se.

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations.

PER CURIAM

{¶ 1} Defendant-appellant, John Bonn, appeals a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, that granted his motion to modify his parental rights and responsibilities. For the following reasons, we affirm that judgment.

{¶ 2} John and plaintiff-appellee, Brenda Bonn, married on August 27, 1994. They have one daughter, T.B., who was born on January 8, 2001.[1] The parties petitioned for a dissolution of their marriage on June 6, 2011. In a decree dated July 14, 2011, the trial court dissolved the parties' marriage. The trial court also designated Brenda as the residential parent and legal custodian of T.B. and granted John parenting time per the

---

[1] To preserve the minor child's privacy, we will use only her initials to refer to her.

agreed parenting time schedule, which the trial court incorporated into the decree. Under that schedule, John received parenting time on alternate weekends from Friday evening to Sunday evening and every other Tuesday evening. Finally, in accordance with the parties' agreement, the trial court ordered that neither party was required to pay child support to the other.

{¶ 3} On September 20, 2011, Brenda filed an ex parte motion seeking the suspension of John's parenting time. Brenda attached to the motion an affidavit in which she testified that John had falsely accused her and her mother (T.B.'s maternal grandmother) of sexually abusing T.B. As a result of John's accusation, the Children Services Division of Pickaway County Job and Family Services had requested interviews with T.B. and Brenda. During her interview with a caseworker, T.B. explained that her father had stated to her that he knew that her mother and grandmother had touched her privates. T.B. told the caseworker that her father's statement was not true, but she had agreed with her father to get him to stop talking. During the interview, T.B. was upset and crying.

{¶ 4} The trial court granted Brenda's ex parte motion and awarded her exclusive custody of T.B. until the matter could be heard at a hearing scheduled for September 27, 2011. In a separate entry filed the same day, the trial court also appointed a guardian ad litem for T.B.

{¶ 5} Apparently, the September 27, 2011 hearing did not go forward. Rather, the parties, their attorneys, the guardian ad litem, and the trial judge signed an agreed entry, filed on September 27, that stated:

> Subject to further order of the court[,] father shall have no less than two (2) supervised visits with the minor child at Buckeye Ranch per week. Father is responsible for costs subject to reallocation. [The] GAL shall investigate and make [a] recommendation for non-Ranch supervisor(s) within one week. Upon agreeing to a non[-]Ranch supervisor[,] [the] parties agree to [parenting time] every other Tuesday [at] 5:30 to 8:30 p.m. and every other Saturday [at] noon to six supervised.

(R. 76.)

{¶ 6} The guardian ad litem initially approved John's parents to supervise John's parenting time with T.B. However, the guardian ad litem rescinded her approval when

she discovered that the paternal grandparents were not preventing John from questioning T.B. about sexual abuse or speaking negatively about Brenda. After a hearing, the magistrate ordered that John's supervised parenting time would occur at Welcome to Our Place ("WTOP"). Upon John's motion, the magistrate later modified his order to allow the visits to occur offsite, but still supervised by WTOP personnel.

{¶ 7} When Brenda had filed her ex parte motion, she had simultaneously filed a motion to reallocate John's parental rights and responsibilities. That motion was set for a trial before the magistrate to occur on August 28, 2012. The parties appeared for the trial with counsel, and they reached an agreement regarding John's parenting time and telephone contact between John and T.B. Both parties, their attorneys, the guardian ad litem, and the magistrate signed a memorandum of agreement setting forth the agreed-upon terms. On October 23, 2012, the trial court issued an agreed judgment entry that, in accordance with the parties' memorandum of agreement, ordered that:

> 1. Petitioner-Father's parenting time shall be supervised by a mutually agreed upon independent supervisor. Said visits shall be up to 6 hours in length either on Saturday or Sunday on alternating weekends, the date to be determined by Father's work schedule and daughter's extracurricular activities subject to further modification by the Court.
>
> 2. Petitioner-Father shall have telephone contact with the minor child on Tuesdays between 6:00 p.m. – 7:00 p.m. and Sundays from 10:00 a.m. – 11:00 a.m. Father shall initiate the telephone contact. There shall be no discussion of this case. The first month of said telephone contact may be monitored by Mother. Petitioner-Mother may discontinue telephone contact if the minor child reports that Father has discussed inappropriate matters with the child.
>
> 3. Neither parent shall disparage the other to the minor child.

(R. 175.) Additionally, the agreed judgment entry recognized that the parties had agreed that the magistrate would rely on the parties' affidavits to decide whether to modify John's child support obligation.

{¶ 8} In a decision dated November 19, 2012, the magistrate: (1) modified John's child support obligation from zero to $255.65 per month effective September 20, 2011 and $424.81 per month effective May 1, 2012, (2) ordered Brenda to maintain health

insurance for T.B., and (3) granted Brenda entitlement to claim T.B. for tax purposes. The trial court adopted the magistrate's decision the same day it was issued.

{¶ 9} John moved for relief from the November 19, 2012 judgment pursuant to Civ.R. 60(B). The trial court denied that motion. In addition to moving for relief from the November 19, 2012 judgment, John also appealed that judgment to this court. In a decision dated June 4, 2013, we affirmed the judgment. *Bonn v. Bonn*, 10th Dist. No. 12AP-1047, 2013-Ohio-2313.

{¶ 10} Even after we affirmed the trial court's judgment, the custody matter remained before the trial court because John had filed his own motion to reallocate parental rights and responsibilities on December 11, 2012. John later also moved for removal of the guardian ad litem and emergency custody.

{¶ 11} In September 2013, the guardian ad litem and John requested that the magistrate designate a different supervisor for overseeing John's parenting time. The magistrate granted that request. John, who had stopped exercising his parenting time in June 2013, once again began meeting with T.B. According to the guardian ad litem's March 25, 2014 report, those visits went well. Consequently, during a November 2013 hearing before the magistrate, the guardian ad litem moved to convert John's parenting time from supervised to unsupervised. In an order dated November 13, 2013, the magistrate granted this motion, stating "father's parenting time with the minor child [shall] be amended from supervised time to unsupervised, commencing on Sunday[,] November 17, 2013, and on Sunday, November 24, 2013, and then shall resume alternating Sundays, from noon until 6:00 p.m." (R. 426.) Brenda moved to set aside the November 13, 2013 order, but she later withdrew that motion.

{¶ 12} On April 1, 2014, a trial before the magistrate began on John's motions seeking reallocation of parental rights and responsibilities, removal of the guardian ad litem, and emergency custody.[2] After a three-day trial, the magistrate issued a decision that recommended granting John's motion to reallocate and awarding him unsupervised parenting time every other Sunday from 12 noon to 6:00 p.m. The magistrate

---

[2] The trial also encompassed two motions for contempt filed by John and two motions for contempt filed by Brenda. Ultimately, the trial court denied John's contempt motions and granted Brenda's contempt motions. John does not challenge the rulings on the contempt motions on appeal.

recommended denying John's motions for removal of the guardian ad litem and emergency custody.

{¶ 13} John objected to the magistrate's decision, but he failed to submit a transcript to support his factual arguments. In a judgment dated October 23, 2014, the trial court overruled John's objections and adopted the magistrate's decision.

{¶ 14} John now appeals from the October 23, 2014 judgment, and he assigns the following error:

> Abuse of Process found in high conflict family court cases, maliciously prosecuted by the opposition to control the outcome by and through unsubstantiated allegations, accepted and adopted by family court judicators unable to justify the punitive actions enforced on record or otherwise.

{¶ 15} Courts of appeals decide appeals on assignments of error. App.R. 12(A)(1)(c). We encountered some difficulty doing that here because John's assignment of error fails to clearly articulate how he believes the trial court erred. Is he arguing that the trial court erred in accepting and adopting the alleged abuse of process? Or is he arguing that the trial court erred in accepting and adopting Brenda's "unsubstantiated allegations?" In the interest of justice, we will address both arguments.

{¶ 16} With regard to his abuse-of-process argument, John contends that he was coerced into signing the September 27, 2011 agreed entry and the August 30, 2012 memorandum of agreement.[3] John asserts that each of those documents was drafted in meetings that included only the parties' attorneys and the magistrate or trial judge, and excluded him. According to John, after the closed-door meetings, his attorneys presented him with the documents and pressured him to "comply or else." (Appellant's brief, at 15.)

{¶ 17} "Courts possess the general power to enter judgment by consent of the parties for the purpose of executing a compromise and settlement." *Grace v. Howell*, 2d Dist. No. 20283, 2004-Ohio-4120, ¶ 9. In an agreed judgment, litigants voluntarily resolve an issue in controversy by agreeing to specific terms, which the court agrees to enforce as its judgment by signing and journalizing an entry reflecting the terms of the settlement agreement. *Bryan v. Johnston*, 7th Dist. No. 11 CA 871, 2012-Ohio-2703, ¶ 12. In essence, an agreed judgment entry is a contract reduced to judgment by a court.

---

[3] As we explained above, the trial court used the August 30, 2012 memorandum of agreement as the basis for the October 23, 2012 agreed judgment.

*Padgett v. Padgett*, 10th Dist. No. 08AP-269, 2008-Ohio-6815, ¶ 28. Thus, courts generally apply the law of contracts to agreed judgments. *Id.* Under the law of contracts, a party may avoid a contract entered under duress. *Nyamusevya v. Nkurunziza*, 10th Dist. No. 10AP-857, 2011-Ohio-2614, ¶ 11-13. Arguably, if John agreed to the modifications to his parenting time under duress, then the trial court possibly erred in entering the September 27, 2011 and October 23, 2012 agreed judgments.

{¶ 18} John's argument, however, faces two unsurmountable hurdles. First, neither the September 27, 2011 agreed judgment nor the October 23, 2012 agreed judgment is at issue in this appeal. Thus, even if we agreed with John's argument, we have no authority to reverse either of those agreed judgments. Moreover, a reversal of those judgments would not benefit John. The October 23, 2014 judgment, which reset the terms of John's parenting time, supersedes the September 27, 2011 and October 23, 2012 agreed judgments. Thus, the October 23, 2014 judgment determines the amount of parenting time John now receives. For John to achieve greater parenting time through this appeal, we must find error in the October 23, 2014 judgment, and consequently, reverse that judgment. A finding of error in, and a concomitant reversal of, the September 27, 2011 and October 23, 2012 agreed judgments does not mean that error exists in the October 23, 2014 judgment.

{¶ 19} Second, the doctrine of law of the case bars John's abuse-of-process argument. Under the doctrine of law of the case, "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). This doctrine ensures the consistency of results in a case and avoids endless litigation by settling the issues. *Id.* Pursuant to the doctrine, a litigant may not raise arguments "which were fully pursued, or available to be pursued, in a first appeal." *Hubbard ex rel. Creed v. Sauline*, 74 Ohio St.3d 402, 404-05 (1996).

{¶ 20} Here, the abuse-of-process argument as to both the September 27, 2011 and the October 23, 2012 agreed judgments was available to be pursued at the time of the first appeal. John actually raised that argument with regard to the October 23, 2012 agreed judgment. We rejected the argument due to John's testimony before the magistrate that his consent to the memorandum of agreement was not the result of any threat and he was "okay" with the agreement. *Bonn*, 2013-Ohio-2313, at ¶ 14. That ruling is now law of the

case, and we decline to alter it. Moreover, because John could have argued in his first appeal that the September 27, 2011 agreed entry was invalid because he signed it under duress, we conclude that he is precluded from raising that argument now.[4]

{¶ 21} Having found John's abuse-of-process argument unavailing, we turn to his argument that the October 23, 2014 judgment relies on unsubstantiated allegations. John argues that, contrary to Brenda's statements, he never interrogated T.B. or made false claims about Brenda's family.

{¶ 22} Under R.C. 3109.04(E)(1)(a), a trial court may modify a prior decree allocating parental rights and responsibilities if it finds that a change in circumstances has occurred and modification is in the best interest of the child. *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 21. R.C. 3109.04(F) sets forth the factors a court must consider to determine the best interest of a child. *Ramsey v. Ramsey*, 10th Dist. No. 13AP-840, 2014-Ohio-1921, ¶ 43. Here, two considerations heavily influenced the conclusion that the parenting time ordered is in T.B.'s best interest: (1) T.B.'s wishes, as expressed to the magistrate during an in-chambers interview, and (2) the factual findings that Brenda's family has never been involved in any incestuous relationships and that T.B. has never been exposed to any inappropriate sexual conduct in her mother's home.

{¶ 23} John contends that he has presented evidence that demonstrates that Brenda's family members have engaged in sexually aberrant behavior. Given this evidence, John asserts that he acted reasonably in questioning T.B. about sexual abuse. John maintains that the trial court erred in overlooking his evidence and finding no merit in his allegations of sexual misconduct.

{¶ 24} The trial court could not err as alleged because the trial court never conducted a substantive review of the magistrate's factual findings. The trial court could not perform that review because John failed to file a transcript of the trial before the magistrate.

{¶ 25} Pursuant to Civ.R. 53(D)(3)(b)(iii), a party objecting to a magistrate's decision must support any objections with a transcript of the proceedings before the

---

[4] In his appellate brief, John also asserts that opposing counsel "has abused the process of the family court, the process of children services and the process of the child support enforcement agency." (Appellant's brief, at 19.) John, however, has not identified how that alleged abuse of process resulted in prejudicial error. We thus conclude that the opposing counsel's actions do not present a reason to reverse the October 23, 2014 judgment.

magistrate or an affidavit of evidence. Failure to submit a transcript or affidavit renders any review of the magistrate's factual findings impossible because the reviewing court does not have before it the evidence the magistrate relied on to make the factual findings. Consequently, the trial court must accept the magistrate's factual findings and limit its review to the magistrate's legal conclusions. *Ramsey* at ¶ 18; *Cargile v. Ohio Dept. of Adm. Servs.*, 10th Dist. No. 11AP-743, 2012-Ohio-2470, ¶ 10. On appeal of a judgment rendered without the benefit of a transcript or affidavit, an appellate court only considers whether the trial court correctly applied the law to the facts as set forth in the magistrate's decision. *Cargile* at ¶ 10; *Character-Ragins v. Dains*, 10th Dist. No. 12AP-124, 2012-Ohio-5089, ¶ 8.

{¶ 26} Here, although John objected to the magistrate's decision on factual grounds, he did not submit a transcript or affidavit of evidence in support of his objections. In the absence of a transcript or affidavit, John had no basis on which to raise a challenge to the magistrate's factual findings. The trial court, therefore, did not err in accepting those factual findings as correct.

{¶ 27} John attempts to circumvent the dictates of Civ.R. 53(D)(3)(b)(iii) by relying on documents attached to his motions to argue factual points. However, in making a decision following a trial, "the trial court may only consider the evidence * * * admitted at trial. Other evidence in the record but not admitted at trial may not be considered." *Hoaglin Holdings, Ltd. v. Goliath Mtge., Inc.*, 8th Dist. No. 83657, 2004-Ohio-3473, ¶ 15. Because he did not file a transcript, John cannot establish that the documents he relies upon were admitted during trial. Thus, the trial court did not err in excluding them from its consideration. *See Yu v. Zhang*, 175 Ohio App.3d 83, 2008-Ohio-400, ¶ 20 (2d Dist.) (rejecting the argument that the trial court could review a magistrate's factual finding, when lacking a transcript, based on documents not identified in the magistrate's decision); *accord Brownstone Developers II, LLC v. Jivan Properties, LLC*, 5th Dist. No. 2007-CA-00160, 2008-Ohio-883, ¶ 23 (holding that an appellate court cannot consider documentary evidence absent a transcript of the proceedings before the magistrate "because only the transcript would indicate which exhibits were accepted into evidence").

{¶ 28} In sum, we reject both of John's arguments. We, thus, overrule John's assignment of error.

{¶ 29} As a final matter, we must address Brenda's motion for an award of the reasonable attorney fees associated with this appeal. Pursuant to App.R. 23, a court of appeals may require an appellant to pay the appellee's reasonable expenses, including attorney fees, if the court determines that an appeal is frivolous. An appeal is frivolous if it presents no reasonable question for review. *Smith-Evans v. Lavelle*, 10th Dist. No. 09AP-787, 2010-Ohio-1074, ¶ 15. An award of reasonable expenses under App.R. 23 serves to compensate the appellee for the expense of defending a spurious appeal and helps preserve the appellate calendar for cases worthy of consideration. *Id.*

{¶ 30} We have struggled with the question of how to rule on Brenda's App.R. 23 motion. From John's appellate brief and his advocacy at oral argument, we apprehend that John loves T.B. tremendously and sincerely wants a close father-daughter relationship with her. John has spent considerable time and effort to communicate to this court why he believes he should have more parenting time with T.B. John, however, is not a lawyer and, consequently, his arguments present no real legal challenge to the trial court's October 23, 2014 judgment. His appeal, therefore, is frivolous.

{¶ 31} While it appears that John's unfamiliarity with legal procedure resulted in his inability to raise a reasonable question on appeal, we cannot excuse the filing of a frivolous appeal because the appellant is a pro se litigant. We must hold John, who chose to proceed pro se, to the same standard as a litigant represented by counsel. *Discover Bank v. Doran*, 10th Dist. No. 10AP-496, 2011-Ohio-205, ¶ 6. Accordingly, we grant Brenda's motion and order John to pay Brenda $1,000, which we find constitutes reasonable compensation for the expenses Brenda incurred to respond to this appeal.

{¶ 32} For the foregoing reasons, we overrule the sole assignment of error, and we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations. Additionally, we grant the App.R. 23 motion for an award of reasonable expenses.

*Motion for attorneys fees granted; judgment affirmed.*

BROWN, P.J., KLATT and HORTON, JJ., concur.