[Cite as *Taylor v. Lucas*, 2025-Ohio-2840.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Asia Taylor, | : | |
| Plaintiff-Appellee, | : | No. 24AP-472 |
| | | (M.C. No. 2023 CVG 33857) |
| v. | : | |
| Brandy Lucas, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on August 12, 2025

**On brief:** *Brandy Lucas*, pro se. **Argued:** *Brandy Lucas.*

APPEAL from the Franklin County Municipal Court

EDELSTEIN, J.

{¶ 1} Defendant-appellant, Brandy Lucas, appeals, pro se, from the July 1, 2024 judgment entered by the Franklin County Municipal Court ordering her to pay plaintiff-appellee, Asia Taylor, $9,767.13, plus court costs, for holdover tenancy and property damage following eviction. For the following reasons, we reverse and remand to the trial court for further proceedings consistent with this decision.

## I. FACTS AND PROCEDURAL OVERVIEW

{¶ 2} Ms. Taylor is the landlord of a condominium on Athalia Drive in Columbus, Ohio. (*See* Sept. 12, 2023 Compl. at ¶ 1.) Ms. Lucas entered into a written lease agreement with Ms. Taylor to lease that property on February 27, 2023. (*See* Compl., Attached Rental Agreement.) On September 6, 2023, Ms. Taylor served Ms. Lucas with a three-day written notice to leave the premises for non-payment of rent. (Compl., Attached Notice Letter.) Because Ms. Lucas did not comply, Ms. Taylor filed a forcible entry and detainer action against Ms. Lucas on September 12, 2023.

{¶ 3} A hearing on Ms. Taylor's forcible entry and detainer action was held before a magistrate on October 3, 2023. Following that hearing, the parties negotiated and prepared an agreed judgment entry to resolve the dispute, which was accepted and adopted by the trial court on October 9, 2023. Among other things, Ms. Lucas agreed to (1) pay the back balance of $8,055 through a third party by October 13, 2023, (2) pay $500 by October 13, 2023 toward November 2023 rent, (3) pay the remainder of the November 2023 rent, in the amount of $1,115, by November 5, 2023, and (4) vacate the premises by 11:59 p.m. on November 30, 2023. (Oct. 9, 2023 Agreed Entry.) Ms. Lucas further agreed that if she failed to make the required payments or did not vacate the premises as agreed, Ms. Taylor "may submit an affidavit detailing the failure to vacate and/or pay as agreed and be entitled to a judgment and immediate set out."[1] (Oct. 9, 2023 Agreed Entry.)

{¶ 4} On December 1, 2023, Ms. Taylor moved for immediate set out and restitution of the premises, alleging in an affidavit that Ms. Lucas failed to timely vacate the premises in accordance with the agreed judgment entry. The trial court granted Ms. Taylor's motion, issuing a writ of restitution for immediate set out.

{¶ 5} On January 11, 2024, Ms. Lucas alleged in a filing (captioned as an "Answer" but construed as a counterclaim) that Ms. Taylor had wrongfully withheld or otherwise failed to return her $1,315 security deposit.[2] It is undisputed that Ms. Lucas's security deposit was not returned to her. Ms. Taylor maintained this was because the damage to the property went beyond normal wear and tear, and the itemized cost of those damages far exceeded the security deposit amount.

{¶ 6} Following an unsuccessful mediation of the matter, the parties appeared before the trial court on June 27, 2024 for a hearing on Ms. Lucas's counterclaim regarding her withheld security deposit and additional damages alleged by Ms. Taylor following Ms. Lucas's departure from the premises. (*See* June 27, 2024 Tr. at 4-5, 59.)

{¶ 7} At that hearing, Ms. Taylor contended that she was owed payment for the additional days Ms. Lucas stayed and for damages to the property. (Tr. at 5.) She presented

---

[1] "Set out" refers to the process of physically removing the tenancy and their belongings from the property. *See*, *e.g.*, Franklin County Municipal Court, *Eviction Court: FAQ*, https://municipalcourt.franklincountyohio. gov/Courts/Eviction-Court (accessed Aug. 11, 2025) [https://perma.cc/2BEK-DUPA].

[2] The February 27, 2023 rental agreement indicates Ms. Lucas paid a $1,400 security deposit. (*See* Compl., Attached Rental Agreement at ¶ 5.) We note, however, that Ms. Lucas never claimed she paid a security deposit greater than $1,315 in the trial court and does not contend as much on appeal. (*See* Jan. 11, 2024 Answer.)

evidence and testimony about Ms. Lucas remaining in the rental property after November 30, 2023. (Tr. at 6-7, 28-30.) Ms. Taylor conceded she did not know the exact date Ms. Lucas left since Ms. Lucas failed to return her set of keys and access fobs to Ms. Taylor. (*See* Tr. at 25-27.) Nonetheless, Ms. Lucas admitted she did not move out until December 2, 2023. (*See* Tr. at 35-36, 50, 56.) Under the lease agreement, a tenant who fails to turn in their key or "is found remaining in the property beyond the last day" of the lease, without renewal or permission, "will be charged the prorated rent per day plus an additional service[] charge of $200 per day." (Compl., Attached Lease Agreement at ¶ 42.)

{¶ 8}   Ms. Taylor also presented evidence and testimony about damages to the property that were assessed after Ms. Lucas vacated the premises, including broken doors, large holes in the walls, broken cabinets, burn stains on carpeting, ceiling damage, broken appliances, and water damage stemming from Ms. Lucas's alleged failure to report water leaks as required by the lease agreement. (*See* Tr. at 7-31, 57-59. *See also* Compl., Attached Rental Agreement at ¶ 27.) Ms. Lucas conceded that she (or her daughter) caused some of the identified damage to the condominium. (*See* Tr. at 35, 51-55.)  But Ms. Lucas maintained that she reported the issues about her kitchen appliances leaking and associated black mold to city code enforcement while she was still lawfully residing at the condominium. (*See* Tr. at 35-42, 53-57.) Though Ms. Lucas claimed Ms. Taylor became aware of the black mold issues from city code enforcement officers (*see* Tr. at 35), Ms. Taylor maintained Ms. Lucas failed to notify her of the presence of water leaks, moisture problems, and mold growth within 48 hours of discovering the issues (*see* Tr. at 9-13, 16-17), as required by the lease agreement (*see* Compl., Attached Rental Agreement at ¶ 27).

{¶ 9}   Ms. Taylor also alleged that while Ms. Lucas was renting her condominium, Ms. Lucas committed numerous violations of the rules of the condominium's homeowners association ("HOA"). (*See* Tr. at 17-18.) Ms. Taylor further alleged that notices of these violations and fines were sent directly to Ms. Lucas at the condominium, but Ms. Lucas failed to pay them. (*See* Tr. at 17-19.) Additionally, Ms. Taylor presented evidence that Ms. Lucas smoked inside of the property and had a dog on the premises, which were both prohibited by the written lease agreement. (*See* Tr. at 17-22.) Ms. Taylor also claimed additional people not named in the lease agreement were living with Ms. Lucas, which was prohibited by the parties' written lease agreement. (Tr. at 22-23.)

{¶ 10} Ms. Taylor presented the court with an itemized list of damages she was requesting, in the amount of $9,725.00 (with sales tax, $10,430.06 in total) created with the assistance of Ms. Taylor's contractor and handyman, marked as Exhibit 1. (Tr. at 8-9, 30.) On further questioning by the trial court about that exhibit, Ms. Taylor acknowledged the sales tax she calculated on the total damages amount erroneously included some untaxed expenses, including outstanding HOA fines and fees. (*See* Tr. at 30-31.) Unlike the itemized list of damages Ms. Taylor sent to Ms. Lucas after she vacated the premises, which was marked as Exhibit S (*see* Tr. at 43-45), the itemized damages list presented to the trial court at the June 2024 hearing as Exhibit 1 did not include a line item deducting the withheld security deposit from the total damages amount.

{¶ 11} On July 1, 2024, the trial court entered judgment in favor of Ms. Taylor and against Ms. Lucas in the amount of $9,367.13, plus an additional $400.00 for the two-day period of holdover tenancy and court costs. The trial court did not award damages, as requested by Ms. Taylor, "for the extra tenants, taxes on services that were not eligible, or costs incurred due to failure to comply with the lease." (July 1, 2024 Jgmt. Entry at 1.) The court also found Ms. Lucas did not make demand on Ms. Taylor for return of the security deposit and the legitimate damages far exceeded the amount of the security deposit. Based on these findings, the court dismissed Ms. Lucas's claim regarding the failure to return her security deposit.

{¶ 12} Ms. Lucas now appeals from that judgment, and asserts the following sole assignment of error for our review:

> THE TRIAL COURT ERRED IN ISSUING JUDGMENT IN FAVOR OF ASIA TAYLOR. THE JUDGMENT IS NOT SUPPORTED BY THE EVIDENCE.

{¶ 13} As an initial matter, we note that Ms. Lucas's brief does not comply with App.R. 16(A)(7). Pursuant to App.R. 16(A)(7), an appellant's brief must include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Here, Ms. Lucas's brief mostly comprises of accusations against Ms. Taylor, the truth of which are not properly before us on appeal. Thus, Ms. Lucas's brief fails to provide a cognizable

argument or legal authority to support her contention that the trial court's judgment is not supported by the evidence.

{¶ 14} Under App.R. 12(A)(2), we are permitted to "disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." *See also* App.R. 12(A)(1)(b) (requiring appellate courts to "[d]etermine the appeal on its merits on the assignments of error set forth in the briefs under App.R. 16"). Therefore, we could disregard and summarily overrule Ms. Lucas's assignment of error. *See* App.R. 12(A)(2). *See also Angus v. Angus*, 2015-Ohio-2538, ¶ 10 (10th Dist.), citing *CitiMortgage, Inc. v. Asamoah*, 2012-Ohio-4422, ¶ 5 (10th Dist.); *Tonti v. Tonti*, 2007-Ohio-2658, ¶ 2 (10th Dist.).

{¶ 15} "Many times, however, appellate courts instead review the appealed judgment using the appellants' arguments in the interest of serving justice." *Angus* at ¶ 10. That said, if we "cannot understand an appellant's arguments, [we] cannot grant relief." *Id.*, citing *State v. Dunlap*, 2005-Ohio-6754, ¶ 10 (10th Dist.). And, while we "will construe pro se filings generously, appellate courts cannot construct legal arguments for an appellant." *Id.*, citing *Williams v. Barrick*, 2008-Ohio-4592, ¶ 24 (10th Dist.), and *Miller v. Johnson & Angelo*, 2002-Ohio-3681, ¶ 2 (10th Dist.)

{¶ 16} Therefore, in the interest of justice, we will attempt to review Ms. Lucas's claim and construe it as challenging the weight of the evidence. *See* App.R. 12(C)(1).

## II. ANALYSIS

{¶ 17} In her sole assignment of error, Ms. Lucas contends the "trial court erred in issuing judgment in favor of Asia Taylor" and the "judgment is not supported by the evidence." (*See* Appellant's Brief at 2.)

{¶ 18} When reviewing a civil appeal from a bench trial, we apply a manifest weight standard of review. App.R. 12(C); *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77 (1984). *See also Levine v. Kellogg*, 2020-Ohio-1246, ¶ 33 (10th Dist.) ("*Levine I*"), quoting *Hensel v. Childress*, 2019-Ohio-3934, ¶ 24 (1st Dist.) (" 'An award of damages in a landlord-tenant dispute is governed by a manifest-weight-of-the-evidence review.' "). In evaluating a claim challenging the weight of the evidence, we review the entire record and must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way

and created such a manifest miscarriage of justice that the judgment must be vacated.  *See, e.g.*, *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19-20.

{¶ 19}  In considering whether a civil judgment is against the manifest weight of the evidence, "we presume the findings of the trier of fact are accurate."  *Levine v. Kellogg*, 2022-Ohio-3440, ¶ 17 (10th Dist.) ("*Levine II*"), citing *Schultz v. Wurdlow*, 2012-Ohio-3163, ¶ 15 (10th Dist.), citing *Seasons Coal Co.* at 79-80.  Judgments that are supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.  *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus.  A party alleging that a trial court's finding is against the manifest weight of the evidence " 'must demonstrate that the evidence could lead to only one conclusion and that conclusion is contrary to the judgment.' "  *Holloway v. Leech*, 2019-Ohio-43, ¶ 17 (10th Dist.), quoting *Hill v. Briggs*, 111 Ohio App.3d 405, 412 (10th Dist. 1996).  An appellate court may not substitute its judgment for that of the trial court where there exists competent, credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge.  *See, e.g.*, *Holloway* at ¶ 17; *Koch v. Ohio Dept. of Natural Resources*, 95 Ohio App.3d 193, 198 (10th Dist. 1994).

{¶ 20}  Disputes between a landlord and tenant are governed by R.C. Chapter 5321, commonly referred to as the "Ohio Landlord-Tenant Act."  *See, e.g.*, *Whitestone Co. v. Stittsworth*, 2007-Ohio-233, ¶ 7 (10th Dist.), citing *Vardeman v. Llewellyn*, 17 Ohio St.3d 24, 26 (1985).  The statute establishes the law controlling rental agreements for residential properties, as well as the rights and responsibilities of landlords and tenants.  *Id.*

{¶ 21}  Among other things, a tenant has a duty to return the premises to the landlord in substantially as good a condition as when it was received.  *Levine II* at ¶ 13, citing *Hensel*, 2019-Ohio-3934, at ¶ 26 (1st Dist.), citing *Bibler v. Nash*, 2005-Ohio-5036, ¶ 18 (3d Dist.).  Ohio law permits a landlord to "recover damages from a tenant for violations of R.C. 5321.05 or based on violations of the lease."  *Levine II* at ¶ 13, citing *Levine I* at ¶ 40, quoting *Kelley v. Johnston*, 2001-Ohio-2622 (4th Dist.).

{¶ 22}  Pursuant to R.C. 5321.05(A)(6), "[a] tenant who is a party to a rental agreement shall . . . [p]ersonally refrain and forbid any other person who is on the premises with his permission from intentionally or negligently destroying, defacing, damaging, or removing any fixture, appliance, or other part of the premises."  A tenant is liable for

extraordinary damages that exceed ordinary wear and tear. *See Levine II* at ¶ 13, citing *Hensel* at ¶ 26, citing *Bibler* at ¶ 18. And, under R.C. 5321.05(C)(1), a landlord can recover "actual damages" that result when a tenant violates any of the obligations imposed upon her by R.C. 5321.05(A)(1) through (8). *See Levine II* at ¶ 13-14.

{¶ 23} A landlord bears the burden of presenting evidence linking the claimed damages to the tenant's failure to meet their obligations under R.C. 5321.05 or to comply with the terms of the lease agreement. *See Levine II* at ¶ 13, citing *Whitestone*, 2007-Ohio-233, at ¶ 27 (10th Dist.), citing *Zilka v. Asberry*, 2005-Ohio-1881, ¶ 9 (6th Dist.). To satisfy that burden, " ' "the landlord must generally present evidence regarding the condition of the premises both before the tenant moves in and after [the tenant] moves out." ' " *Levine II* at ¶ 13, quoting *Levine I* at ¶ 40, quoting *Estie Invest. Co. v. Braff*, 2018-Ohio-4378, ¶ 26 (11th Dist.). "This burden is usually satisfied by the testimony of a witness with knowledge of the conditions, such as a landlord's testimony that the premises were in good condition at the outset of the tenancy and the tenant made no initial complaints." *Estie* at ¶ 26, citing *Dupal v. Reindle*, 2002 Ohio App. LEXIS 1074, *2 (8th Dist. Mar. 14, 2002), and *Snyder v. Waldron*, 2013-Ohio-3416, ¶ 30 (4th Dist.).

{¶ 24} Relevant to Ms. Lucas's claim seeking recovery of her security deposit, R.C. 5321.16(B) provides that money held as a security deposit may be applied to payment for damages that were caused by the tenant's failure to comply with R.C. 5321.05. Critically, however, any deduction must be itemized and identified in a written notice provided to the tenant within 30 days of the termination of the rental agreement if the tenant must provide a forwarding address. R.C. 5321.16(B).

{¶ 25} A tenant may recover the amount of a security deposit wrongfully withheld, including reasonable attorney fees based on the landlord's non-compliance with this statutory section. R.C. 5321.16(C). However, a tenant may recover under that statutory section **only** if the landlord **wrongfully** withheld the deposit. *Vardeman*, 17 Ohio St.3d at 29. If the security deposit is not wrongfully withheld, a tenant cannot recover damages despite the landlord's non-compliance with R.C. 5321.16(B).

{¶ 26} In this case, the trial court found Ms. Lucas owed Ms. Taylor $9,767.13, representing the total cost of damages following Ms. Lucas's tenancy (including taxes on services that were eligible) and the two-day period of holdover tenancy testified to by Ms. Lucas. In her sole assignment of error, Ms. Lucas broadly alleges the "trial court erred in

issuing judgment in favor of Asia Taylor" and that the "judgment is not supported by the evidence." (Appellant's Brief at 2.) However, Ms. Lucas fails to provide any argument supporting why she believes that is so. Instead, the substance of Ms. Lucas's argument—without any reference to any legal authority supporting her position—focuses on the factual circumstances surrounding the water damage and black mold, including city code enforcement's involvement in the matter in September and October 2023. (*See* Appellant's Brief at 4-5.) Thus, the scope of Ms. Lucas's argument on appeal is limited to the propriety of the trial court's decision to award damages in connection with water damage and black mold.

{¶ 27} Ms. Lucas presented the trial court with a video purporting to show black mold on September 7, 2023. (*See* Tr. at 35-37.) And she claimed she reported this issue to city code enforcement sometime thereafter. (*See* Tr. at 35-37.) However, nothing in the record before us establishes ***when*** Ms. Lucas first identified the presence of mold growth, water leaks, and moisture problems. (*See also* Tr. at 35-42.) There is likewise no clear indication as to when she contacted ***Ms. Taylor*** (or the appropriate property management designee) about these issues. Under the terms of the lease agreement, a tenant's failure to notify the landlord of these issues within 48 hours of observing damage renders the tenant liable for the cost of all associated repairs. (*See* Compl., Attached Rental Agreement at ¶ 27.)

{¶ 28} Although both parties presented exhibits at the hearing and some of those were considered by the trial court in rendering its judgment, ***none*** of the parties' exhibits were submitted and admitted as evidence at the close of the hearing. (*See* July 1, 2024 Jgmt. Entry) ("With regards to the exhibits presented, they will be held by the Court Reporter, but they were not submitted, and a foundation was not laid on many of them to make them viable for consideration by the Court."). As a result, we lack the ability to review Ms. Lucas's video purporting to depict black mold in September 2023.

{¶ 29} Notably, Ms. Lucas did not object to Ms. Taylor's evidence regarding the cost of repairs at the June 2024 hearing before the trial court and does not make any arguments regarding the propriety of this evidence on appeal. At the June 2024 hearing, Ms. Lucas declined to cross-examine Ms. Taylor regarding the reasonableness of her expenditures for repairs. (*See* Tr. at 32.) Ms. Lucas also does not challenge the sufficiency or weight of the evidence supporting Ms. Taylor's claims that Ms. Lucas negligently damaged the property

in other respects—*e.g.*, holes in the walls, broken doors, unhinged cabinet doors, burned carpeting (*see* Tr. at 8-10, 13-17, 23-24, 27-28, 57-59), committed HOA rule violations (*see* Tr. at 17-22), failed to pay HOA fines incurred as a result of those violations (*see* Tr. at 17), violated the terms of the lease agreement (*see* Tr. at 15-23), failed to return keys and amenity access fobs (*see* Tr. at 24-27), and stayed in the condominium at least two days after she agreed to leave pursuant to the agreed judgment entry (*see* Tr. at 25, 28-30, 42-43). Among other things, the lease provides that "[i]n general, actions taken or not taken by LESSEE may result[] in financial harm (aka Damages) to the LESSOR. LESSEE agrees to pay any and all damages resulting from action or negligence by LESSEE." (*See* Compl., Attached Rental Agreement at ¶ 17.)

{¶ 30} The trial court, sitting as the trier of fact, accepted Ms. Taylor's claimed damages in part but rejected them in other respects. Although the court entered judgment in the amount of $9,767.13 (plus court costs), nothing in the record before us establishes an itemized breakdown of the final judgment entered in Ms. Taylor's favor. And, while surely prudent in practice, we are not aware of any legal authority requiring trial courts to itemize an award of damages under circumstances like those presented here. *See*, *e.g.*, *Hineman v. Brown*, 2003-Ohio-926, ¶ 24 (11th Dist.) ("The requirement for itemization of damages, set forth in R.C. 5321.16(B), places a duty on the landlord to provide an itemized list of damages. This requirement is not imposed on a trial court. ***Further, there is no requirement that a trial court itemize an award of damages***."). (Emphasis added.)

{¶ 31} To be sure, neither party in this case requested findings of fact or conclusions of law under Civ.R. 52 itemizing how the trial court calculated the final award. Civ.R. 52 provides, in relevant part, as follows:

> When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ.R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the findings of fact found separately from the conclusions of law.

"A party that fails to request findings of fact pursuant to Civ.R. 52 faces an uphill burden of demonstrating that a judgment is against the manifest weight of the evidence." *O'Brien v. O'Brien*, 2010-Ohio-3258, ¶ 9 (12th Dist.).

{¶ 32} In light of Ms. Lucas's failure to request findings of fact and conclusions of law, we must presume the trial court correctly applied the law and will affirm the court's judgment so long as some competent, credible evidence supports it.

{¶ 33} Although evidence regarding the condition of the premises before Ms. Lucas moved in was limited, Ms. Taylor testified about installing a "basically brand new" and "more upgraded" stove in the condominium. (Tr. at 23-24.) Ms. Taylor generally explained the entire unit was inspected when Ms. Lucas moved into the property and indicated she had "already [given] all of that proof" to the court in connection with the eviction proceedings. (*See* Tr. at 15.) Most of Ms. Taylor's testimony and evidence presented on the damages caused during Ms. Lucas's tenancy was not disputed by Ms. Lucas at trial and is not challenged now on appeal. Further, and most significantly, Ms. Lucas does not argue on appeal that Ms. Taylor failed to adequately establish the condition of the premises before Ms. Lucas moved in.

{¶ 34} Ultimately, the trial court awarded $9,367.13 in damages (excluding holdover tenancy costs), which included taxes on services the court found were eligible.[3] The court did not itemize its calculation of the damages it awarded. But, again, we note that Ms. Lucas did not question or challenge the damage amounts presented by Ms. Taylor at the June 2024 hearing, and neither party requested findings of fact or conclusions of law under Civ.R. 52 itemizing how the court calculated the final award. Moreover, on appeal, Ms. Lucas does not challenge any of the findings made by the trial court. While her sole assignment of error broadly alleges that "[t]he judgment is not supported by the evidence" (Appellant's Brief at 2), Ms. Lucas does not make any legal arguments supporting her position or otherwise explain why she believes the court erred in rendering its judgment. Instead, Ms. Lucas restates the same narrative she provided at the June 2024 hearing in

---

[3] Ms. Taylor's itemized damages list used a sales tax rate of 7.25 percent. We note, however, that the controlling sales tax rate for Franklin County in December 2023 was 7.50 percent. *See* Ohio Department of Taxation, *Tax Rates & Changes: 2023 Rate Changes for 4th Quarter (Effective October 1, 2023 – December 31, 2023)*, https://tax.ohio.gov/business/ohio-business-taxes/sales-and-use/rate-changes/rate-changes (accessed Aug. 11, 2025) [https://perma.cc/FND6-AW2D]. The record before us does not indicate what sales tax rate the trial court used when it calculated the damages awarded in its July 1, 2024 judgment. In any event, Ms. Lucas does not challenge this aspect of the damages award on appeal.

support of her belief that she should not be responsible for repair costs associated with the black mold and water damage in her kitchen. (*See* Appellant's Brief at 4-5.) The trial court clearly disagreed and, on appeal, Ms. Lucas fails to present any arguments explaining why she believes that was error.

{¶ 35} The issues raised, sua sponte, by the dissent are not found in the arguments Ms. Lucas makes on appeal. Thus, while it is true that Ms. Lucas's statement of the assignment of error summarily asserts that the "judgment is not supported by the evidence" (Appellant's Brief at 2), Ms. Lucas's supporting argument is ultimately a recitation of some factual allegations—the propriety of the eviction itself and communications with code enforcement about the water damage issues—and a general claim of retaliation, which was not before the court below. Ms. Lucas ***does not***, however, make any arguments in her brief concerning the adequacy of the evidence supporting the ***amount*** of damages awarded, the trial court's decision to rely on that evidence, or the manner of the proceedings below. In addition to failing to explain why she believes the "judgment is not supported by the evidence," Ms. Lucas does not cite to any law in the argument section (or elsewhere) that is relevant to the substance of the issue raised in this case, as required by App.R. 16(A)(7).

{¶ 36} For these reasons, and based on the limited argument presented in this appeal, we find the record contains some competent, credible evidence, if believed, to support the trial court's award of $9,367.13 for damages owed to Ms. Taylor and taxes on eligible services. The court also awarded $400.00 for an additional two-day period of holdover tenancy. Ms. Lucas admitted to waiting until December 2, 2023 to vacate the property. (July 1, 2024 Jgmt. Entry at 1; *see* Tr. at 35-36, 49-51, 56.) Thus, we find competent, credible evidence in the record before us to support the trial court's award of $400.00 for the two-day period of holdover tenancy, pursuant to the terms of the lease agreement. (*See* Compl., Attached Rental Agreement at ¶ 42.) And because Ms. Taylor was the prevailing party, we further find the court properly allocated court costs against her without taking testimony on the matter. *See* Civ.R. 54(D) ("[e]xcept when express provision therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs"); *J&H Reinforcing v. Ohio School Facilities Comm.*, 2014-Ohio-1963, ¶ 18 (10th Dist.) ("[a] prevailing party generally is the party in whose favor the verdict or decision is rendered and judgment entered") (Internal quotation marks and citations omitted.).

{¶ 37} Although we find competent, credible evidence to support a total award of $9,767.13 in damages, we conclude the trial court's judgment resulted in a manifest miscarriage of justice because the court failed to deduct Ms. Lucas's retained security deposit from that amount. In her January 11, 2024 filing, Ms. Lucas claimed she paid a security deposit in the amount of $1,315.00 to Ms. Taylor, none of which was credited or otherwise returned to her. (Jan. 11, 2024 Answer.) Because the evidence supports the trial court's finding that the cost of damages to the condominium was greatly in excess of the unreturned deposit amount, Ms. Taylor was entitled to withhold the security deposit as a matter of law. *See* R.C. 5321.16(B). Thus, although the record does not clearly establish when Ms. Taylor provided Ms. Lucas with an itemized breakdown of the property damage and withheld security deposit, we find the security deposit was not, as a matter of law, wrongfully withheld. *See, e.g., Vardeman*, 17 Ohio St.3d at 29; *McGreevy v. Bassler*, 2010-Ohio-126, ¶ 14 (10th Dist.). On review of the July 1, 2024 judgment entry, it does not appear the trial court deducted the withheld security deposit amount ($1,315.00) from the $9,767.13 judgment entered against Ms. Lucas. This was ***clearly*** a mistake of law. *See* R.C. 5321.16(B).

{¶ 38} For these reasons, we sustain Ms. Lucas's sole assignment of error as to the trial court's failure to deduct the $1,315 security deposit amount from the entered judgment amount. However, we find all other issues raised in Ms. Lucas's sole assignment of error are without merit.

## III. CONCLUSION

{¶ 39} Based on the foregoing, we sustain Ms. Lucas's sole assignment of error, and the judgment of the Franklin County Municipal Court is affirmed in part and reversed in part. We remand this matter to that court to credit Ms. Lucas with the $1,315 security deposit as payment toward that judgment.

*Judgment affirmed in part and reversed in part;*
*cause remanded with instructions.*

BEATTY BLUNT, J., concurs.
JAMISON, J., dissents.

JAMISON, P.J., dissenting.

{¶ 40} Because I find that the evidence in the trial record does not prove a damages award in the amount of $9,767.13, plus court costs, I respectfully dissent.

{¶ 41} Ms. Lucas raises one assignment of error: the judgment is not supported by the evidence. Despite deficiencies in Ms. Lucas' brief, the majority decision reviews whether the manifest weight of the evidence supports the trial court's judgment that the landlord, Ms. Taylor, is entitled to $9,767.13 in damages from Ms. Lucas, the tenant. I cannot join this decision because it considers documents that are not in evidence.

{¶ 42} "In rendering judgment after a bench trial, a trial court considers the evidence adduced from the witness stand, the exhibits admitted during trial, and stipulations." *Kidane v. Gezahegn*, 2015-Ohio-2662, ¶ 20 (10th Dist.); *accord Midwest Educators Credit Union, Inc. v. Werner*, 2008-Ohio-641, ¶ 35 (10th Dist.) (holding that "[t]he judgment of the trial court must be based upon the evidence actually adduced from the witness stand, from exhibits admitted during trial or from any stipulations") (further quotation marks and citations omitted). In other words, when reaching a decision following trial, " 'the trial court may only consider the evidence . . . admitted at trial.' " *Bonn v. Bonn*, 2015-Ohio-3642, ¶ 27 (10th Dist.), quoting *Hoaglin Holdings, Ltd. v. Goliath Mtge., Inc.*, 2004-Ohio-3473, ¶ 15 (8th Dist.).

{¶ 43} A trial court cannot consider evidence in the record but not admitted at trial. *Paldino v. Johnson*, 2023-Ohio-1947, ¶ 12, fn. 2 (11th Dist.); *Hawes v. Downing Health Technologies, L.L.C.*, 2022-Ohio-1677, ¶ 36 (8th Dist.); *Bonn* at ¶ 27; *accord Cugini & Capoccia Builders, Inc. v. Ciminello's, Inc.*, 2003-Ohio-2059, ¶ 21 (10th Dist.) (holding that the trial court erred in relying on evidence not admitted at trial and/or inadmissible evidence to conclude the plaintiff was entitled to a certain amount of damages). Likewise, "[a] reviewing court may not consider an exhibit unless the record demonstrates that the exhibit was formally admitted into evidence." *Allen v. Allen*, 2005-Ohio-5993, ¶ 24 (10th Dist.).

{¶ 44} In *Hoaglin Holdings*, the Eighth District Court of Appeals refused to consider copies of a lease and lease assignment agreement attached to the plaintiff's complaint because those documents were not admitted into evidence at trial. The trial court in *Hoaglin Holdings* found the defendants liable for breach of the lease agreements, but held

a trial to determine the amount of damages owed to the plaintiff. After trial, the trial court refused to award the plaintiff any damages because the plaintiff failed to submit evidence to sustain its evidentiary burden.

{¶ 45} On appeal, the plaintiff argued that the lease agreements were part of the evidence because the agreements were in the record, although not introduced or admitted at trial. The Eighth District disagreed, holding:

> [T]he duplicates of the contracts attached to the complaint were not in evidence. Though the pleadings are part of the record, they are not evidence. . . . The pleadings were never admitted as evidence. See Civ.R. 8(G). Therefore, the court could not consider them or the attachments as evidence.

*Hoaglin Holdings* at ¶ 17.

{¶ 46} In this case, the majority decision considers the lease between Ms. Taylor and Ms. Lucas, even though that document was never admitted into evidence. Although the lease was attached to Ms. Taylor's complaint, this court should not consider it because neither the complaint nor the attached lease was admitted at trial. Likewise, this court's review should not include the many documents the parties marked as exhibits but never moved to admit into evidence. These documents include Exhibit 1, the itemized list of Ms. Taylor's damages.

{¶ 47} Once all non-evidentiary materials are excluded from consideration, only the testimony of Ms. Taylor and Ms. Lucas remains. I, therefore, will analyze that testimony to determine whether Ms. Taylor met her burden of proving the amount of damages owed in this case.

{¶ 48} "A landlord can only recover damages from a tenant for violations of R.C. 5321.05 or based on violations of the lease." *Levine v. Kellogg*, 2022-Ohio-3440, ¶ 13 (10th Dist.) ("*Levine II*"). The landlord bears the burden of demonstrating sufficient evidence to link the alleged damages to the tenant's violation of R.C. 5321.05 or the lease. *Id.* Generally, meeting this burden requires the landlord to present evidence regarding the condition of the premises both before the tenant moves in and after the tenant moves out. *Id.*

{¶ 49} A landlord is not entitled to recover for damage to the property that was a result of ordinary wear and tear. *Id.* at ¶ 14. Depending on the circumstances of the case, a court may deploy one of multiple methods of determining ordinary wear and tear. *Levine v. Kellogg*, 2020-Ohio-1246, ¶ 45 (10th Dist.) ("*Levine I*"). A court may look at the age of

the damaged item, its expected life span, whether any repairs were made due to normal deterioration, and whether the tenant had damaged the item in any way that would be considered waste. *Id.* Alternatively, the court may define ordinary wear and tear as any damage that is not the kind of damage specified in R.C. 5321.05 or the lease. *Id.*

{¶ 50} First, Ms. Taylor testified that she spent $1,290 to replace the upstairs carpet because "[t]here [were] burn stains in the floor" and "large stains that we just could not get out normally." (Tr. at 14.) Ms. Taylor explained that she had stressed to Ms. Lucas the importance of taking care of the carpet when Ms. Lucas leased the condominium. Ms. Taylor attributed the carpet damage to cigarette smoking, and she also testified that she knew Ms. Lucas allowed smoking in the condominium because she saw ashtrays, cigarettes, and butts in the condominium. Pursuant to R.C. 5321.05(A)(6), a tenant must refrain from intentionally or negligently damaging any part of the premises. Burning and staining the carpet through cigarette use would violate R.C. 5321.05(A)(6) and, thus, qualify as more than ordinary wear and tear to the carpet. Consequently, Ms. Taylor proved damages to the premises linked to a violation of R.C. 5321.05(A)(6) in the amount of $1,290.

{¶ 51} Second, Ms. Taylor assessed a $250 pet fee. Ms. Taylor testified that the lease stated, "For unauthorized pets a $250 per pet for each occurrence of undisclosed pets or evidence of pets found residing, even if temporarily, at the property." (Tr. at 21.) According to Ms. Taylor, Ms. Lucas had a dog at the condominium without authorization. Consequently, Ms. Taylor proved a breach of the lease entitling her to $250.

{¶ 52} Third, Ms. Taylor stated she spent $2,300 to replace the stove, refrigerator, and dishwasher. Ms. Taylor stated that "the whole stainless steel [cover of the stove] was ripped off," the refrigerator shelves were broken, and the dishwasher had sustained damage beyond "normal wear and tear." (Tr. at 23-24.) Given the extent of the damages Ms. Taylor described, I would conclude that the damages to the appliances exceeded ordinary wear and tear. Consequently, Ms. Taylor proved damages to the appliances linked to a violation of R.C. 5321.05(A)(6) in the amount of $2,300.

{¶ 53} Fourth, Ms. Taylor testified that she spent $100 to replace a key and a key fob that Ms. Lucas did not return. Ms. Taylor explained that the lease allowed recovery of the "[c]ost of replacing keys which have not been returned and/or cost of a locksmith." (Tr. at 25.) Consequently, Ms. Taylor proved a breach of the lease entitling her to $100.

{¶ 54} Fifth, Ms. Taylor stated that Ms. Lucas stayed in the house two additional days after the date on which she agreed to vacate the premises. Ms. Lucas conceded that she needed those additional two days to move all her belongings out of the house. Ms. Taylor testified that "it is $200 per day that she stays in the property extra, and that's in the lease as well." (Tr. at 26.) Consequently, Ms. Taylor proved a breach of the lease entitling her to $400.

{¶ 55} Ms. Taylor testified to further damages. However, she did not link these damages to a violation of R.C. 5321.05 or the lease.

{¶ 56} First, Ms. Taylor stated that she spent $2,325 to replace the downstairs laminate flooring because "there was large chips and cracks in the flooring." (Tr. at 16.) "To satisfy that burden, ' " 'the landlord must generally present evidence regarding the condition of the premises both before the tenant moves in and after [the tenant] moves out.' " ' *Levine II* at ¶ 13, quoting *Levine I* at ¶ 40, quoting *Estie Invest. Co. v. Braff*, 2018-Ohio-4378, ¶ 26 (11th Dist.)." (Majority Decision at ¶ 23.) Ms. Taylor, however, presented no evidence of the condition of the flooring prior to Ms. Lucas' residence at the condominium, the age of the flooring, the expected life span of the flooring, whether she had previously repaired the flooring, or what Ms. Lucas did to damage the flooring. Given this dearth of evidence, Ms. Taylor has not proven that the damage to the laminate flooring constituted more than ordinary wear and tear. Therefore, I would not award Ms. Taylor any damages for the replacement of the laminate flooring.

{¶ 57} Second, Ms. Taylor testified that she spent $275 to clean black mold that grew in areas of the kitchen damaged by water leaks. Ms. Taylor asked for damages for this expenditure based on the provision in the lease that stated, "Lessee must notify within 48 hours of damage seen relating to, but not limited to, water leaks, moisture problems and/or mold growth." (Tr. at 13.) Ms. Taylor stated that "[t]here [were] leaks in the property, and it was leaking for a long amount of time. [Ms. Lucas] didn't notify anybody that it was leaking until the damage was already done." (Tr. at 9.) However, the lease required Ms. Lucas to notify Ms. Taylor within 48 hours of seeing *damage* related to water leaks, not just water leaks. Ms. Taylor believed Ms. Lucas delayed informing her about seeing mold because "[i]t grows over time." (Tr. at 17.) However, the mold was located underneath the dishwasher and behind the refrigerator—where mold growth was not easily detectable. Also, Ms. Lucas claimed that both she and the maintenance man hired by Ms. Taylor

informed Ms. Taylor about the mold. Based on this evidence, I would conclude that Ms. Taylor has not provided evidence establishing that Ms. Lucas breached the lease by failing to give Ms. Taylor the notice required under the lease. Thus, I would not award Ms. Lucas $275 for mold remediation.

{¶ 58} Third, Ms. Taylor assessed a $500 fee for smoking in the condominium. Ms. Taylor testified that the lease stated, "No smoking is allowed in the interior of the property. Lessee shall be responsible for any damage caused by smoking. And it is up to the discretion of the lessor to determine if there has been smoking in the unit." (Tr. at 19-20.) Ms. Taylor then explained that she arrived at a $500 fee because "[t]here [were] two different occurrences of [smoking], and it's $250 each." (Tr. at 20.) But the lease did not allow a fee for smoking, it only permitted the assessment of damages caused by smoking. Consequently, I would conclude that Ms. Taylor could not recover $500 under the lease for smoking.

{¶ 59} Fourth, I recognize that Ms. Taylor sought additional damages, including damages for the payment of homeowner association fines, holes to walls, and a broken door. However, the evidence does not support an award of these damages because Ms. Taylor either did not testify regarding the amounts at issue or did not link the damage to a violation of R.C. 5321.05 or the lease.

{¶ 60} After finding the evidence supports the majority of Ms. Taylor's damages, the majority decision determines that the trial court's judgment resulted in a manifest miscarriage of justice because it did not deduct Ms. Lucas' retained security deposit. Ms. Lucas, however, failed to testify or otherwise introduce any evidence regarding the amount of her security deposit. While I agree that Ms. Lucas is entitled to her retained security deposit, she failed to carry her burden to prove the amount of that deposit. Consequently, we cannot deduct the security deposit from the amount of damages owed to Ms. Taylor because we have no evidence of the amount to deduct.

{¶ 61} With the foregoing in mind, I would sustain Ms. Lucas' assignment of error in part and reverse it in part, remand with instructions that the trial court calculate damages based on the evidence in the amount of $4,340, and order Ms. Lucas to pay the court costs related to this matter.

_____